The State ex rel. Kincaid, Appellant, *v.* Allen
Refractories Company et al., Appellees.

[Cite as *State ex rel. Kincaid v. Allen Refractories
Co.*, 114 Ohio St.3d 129, 2007-Ohio-3758.]

(No. 2006–1118—Submitted April 3, 2007—Decided August 8, 2007.)

Lanzinger, J.

{¶ 1} We are asked whether a finding of "100% bilateral total loss of sight" for scheduled-loss compensation under R.C. 4123.57(B) compels an award for permanent total disability compensation under R.C. 4123.58(C) in this case. We hold that it does.

## Case Background

{¶ 2} Appellant, James Kincaid, was injured in 1984 when he was employed by Allen Refractories Company. Kincaid sustained severe facial trauma and a concussion at work, and a workers' compensation claim was allowed for "fractured left cheekbone; lacerated left cheek; cerebral concussion; scintillating scintellens (periodic loss of bilateral vision)." Eventually, in May 2004, the commission awarded him scheduled-loss compensation pursuant to 4123.57(B), which authorizes partial disability compensation for "100% bilateral total loss of sight." It is undisputed that as often as nine times a week, Kincaid suffers intermittent episodes of total vision loss that last up to 45 minutes.

{¶ 3} No appeal was taken from the order granting scheduled-loss compensation.

{¶ 4} A month later, Kincaid applied for additional compensation for permanent total disability under R.C. 4123.58(C). The commission denied that request on July 21, 2004, concluding that the "injured worker's impaired vision does not rise to the level that he is qualified for this type of award under Section 4123.58(C). The evidence on file indicates the injured worker has not sustained 'a loss of use' for both eyes." The commission distinguished the standards for "loss" within R.C. 4123.57(B) and 4123.58(C), stating that an award under the former did not compel one under the latter. It reasoned that when Kincaid was

not having an ocular disturbance, he was not blind, having 20/80 vision in the right eye and 20/60 vision in the left. The commission therefore concluded that Kincaid did not have the permanent and total loss of use in both eyes that R.C. 4123.58(C) requires.

{¶ 5} In December 2004, Kincaid filed a complaint in mandamus in the Court of Appeals for Franklin County, requesting that the court order the commission to grant his motion for statutory permanent and total disability benefits. In his brief, Kincaid asserted that the commission abused its discretion in denying permanent total disability because collateral estoppel precluded new conclusions as to whether his loss of vision is total.

{¶ 6} The court of appeals denied the writ. The court deemed collateral estoppel to be inapplicable because the case lacked the identity of issues required for the doctrine's invocation. This matter is now before us on an appeal as of right.

## Legal Analysis

{¶ 7} Kincaid argues that when he was granted compensation for permanent partial disability on May 10, 2004, and the finding of bilateral total loss of sight became final, the commission was collaterally estopped from later finding that his loss was less than total by denying him permanent total disability compensation.

{¶ 8} A derivative of res judicata, collateral estoppel bars "the relitigation of a point of law or fact that was at issue in a former action between the same parties and was passed upon by a court of competent jurisdiction." *Office of Consumers' Counsel v. Pub. Util. Comm.* (1985), 16 Ohio St.3d 9, 10, 16 OBR 361, 475 N.E.2d 782. It requires "an identity of parties and issues in the proceedings" and applies equally to administrative hearings. *Beatrice Foods Co., Inc. v. Lindley* (1982), 70 Ohio St.2d 29, 35, 24 O.O.3d 68, 434 N.E.2d 727; See, also, *Set Prods., Inc. v. Bainbridge Twp. Bd. of Zoning Appeals* (1987), 31 Ohio St.3d 260, 264, 31 OBR 463, 510 N.E.2d 373.

{¶ 9} The court of appeals held that the two awards under discussion differed in their purpose, as permanent partial compensation resembles a damages award, and permanent total disability compensates for impaired earning capacity. *State ex rel. Gen. Motors Corp. v. Indus. Comm.* (1975), 42 Ohio St.2d 278, 282, 71 O.O.2d 255, 328 N.E.2d 387. Collateral estoppel does not apply, the court reasoned, because there is no identity of issues: a determination under one disability statute does not translate into an equivalent finding for purposes of another. We agree with the general principle; however, the court of appeals and the commission erred in applying the term "loss of use" in this case. The medical evidence before the commission does not establish that Kincaid's vision was corrected subsequent to the finding of "100% bilateral total loss of sight."

{¶ 10} We must look at the pertinent provisions of both statutes. R.C. 4123.57 governs permanent partial disability compensation. Among the benefits available thereunder is scheduled-loss compensation. Section (B) provides:

{¶ 11} "In cases included in the following schedule the compensation payable per week to the employee is the statewide average weekly wage as defined in division (C) of section 4123.62 of the Revised Code per week and shall continue during the periods provided in the following schedule:

{¶ 12} " * * *

{¶ 13} "For the permanent partial loss of sight of an eye, the portion of one hundred twenty-five weeks as the administrator in each case determines, based upon the percentage of vision actually lost as a result of the injury or occupational disease, but, in no case shall an award of compensation be made for less than twenty-five per cent of loss of uncorrected vision. 'Loss of uncorrected vision' means the percentage of vision actually lost as the result of the injury or occupational disease."

{¶ 14} R.C. 4123.58 controls permanent total disability compensation and at section (C) states:

{¶ 15} "The loss or loss of use of both hands or both arms, or both feet or both legs, or both eyes, or any two thereof, constitutes total and permanent disability, to be compensated according to this section."

{¶ 16} Both statutes refer to "loss" or "loss of use." Since removal of the eyes was not suffered in this case, we look to "loss of use." Implicit in "loss" for purposes of both statutes is that the loss is permanent. Also implicit in 4123.58(C) is that the loss is total. In May 2004, in adjudicating Kincaid's request for scheduled-loss benefits under R.C. 4123.57(B), the commission found that Kincaid had "100% bilateral total loss of sight."

{¶ 17} We have recognized that the same workers' compensation term can have different meanings, depending on the context in which it is used. In *State ex rel. Kaska v. Indus. Comm.* (1992), 63 Ohio St.3d 743, 746, 591 N.E.2d 235, we noted, "Permanent *total* disability requires a claimant to demonstrate an inability to perform sustained remunerative employment. Temporary total disability, on the other hand, requires only an inability to return to the former position of employment." (Citation omitted and emphasis sic.)

{¶ 18} With respect to R.C. 4123.57(B), "loss of use" means "loss of *uncorrected* vision." (Emphasis added.) R.C. 4123.58(C) does not use the word "uncorrected." Thus, what is a total loss of use under R.C. 4123.57(B) might not be under R.C. 4123.58(C). See *State ex rel. Szatkowski v. Indus. Comm.* (1988), 39 Ohio St.3d 320, 530 N.E.2d 880. There, just as here, the claimant received an award for permanent partial loss of sight and then sought statutory permanent total

disability. Medical evidence, however, indicated that claimant's vision was " 'correctable to normal in each eye with contact lenses.' " Id. at 320–321, 530 N.E.2d 880. This evidence prompted the court of appeals in that case to conclude that the claimant did not have the permanent loss of use of both eyes that R.C. 4123.58(C) mandated.

{¶ 19} We agreed that because R.C. 4123.57(B) refers to "loss of uncorrected vision," later improvement by corrective means is irrelevant to an award under that section. R.C. 4123.58(C), however, does not refer to "loss of uncorrected vision," and thus corrected vision is relevant to awarding compensation for permanent total disability. We therefore held, based on State ex rel. Gassmann v. Indus. Comm. (1975), 41 Ohio St.2d 64, 70 O.O.2d 157, 322 N.E.2d 660, and State ex rel. Walker v. Indus. Comm. (1979), 58 Ohio St.2d 402, 12 O.O.3d 347, 390 N.E.2d 1190, that "irreparable total loss of use" is a prerequisite to recovery under R.C. 4123.58(C). Szatkowski, 39 Ohio St.3d at 321, 530 N.E.2d 880. Because contact lenses had restored Szatkowski's sight, statutory permanent total disability compensation was unavailable.

{¶ 20} Reliance on Szatkowski in Kincaid's case is misplaced. The intermittent nature of Kincaid's blindness does not change the fact that he has total loss of sight; there is no evidence that this condition will change.

{¶ 21} Kincaid's vision has not improved since his award of permanent partial disability compensation. Kincaid argues that a finding of "100% bilateral total loss of sight" means that he is blind—whether for purposes of his scheduled-loss award akin to damages under R.C. 4123.57(B) or for compensation due to permanent impairment of his earning capacity under R.C. 4123.58(C). We agree that the commission's finding under R.C. 4123.57(B) that Kincaid had "100% bilateral total loss of sight" assumes "loss of uncorrected vision." However, for purposes of R.C. 4123.57(B), the fact that Kincaid is not always having visual interruption does not mean that his sight is effectively corrected.

{¶ 22} Dr. George F. Calloway concluded in his January 7, 2004 report supporting the permanent partial award: "I would like to point out that this is only an intermittent complaint but that since he cannot predict or control the timing or the frequency of these attacks, in effect he is disabled at all times because he could be disabled at any time." (Emphasis added.)

{¶ 23} There is no evidence that Kincaid's vision has improved or been "corrected" since the award of permanent partial disability. We therefore reverse the judgment of the court of appeals and grant the writ.

{¶ 24} The judgment of the court of appeals is reversed.

Judgment reversed.

PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

Moyer, C.J., and Cupp, J., dissent and would affirm the judgment of the court of appeals.

---

Koltak & Gibson, L.L.P., and Ronald J. Koltak, for appellant.

Marc Dann, Attorney General, and Charissa D. Payer, Assistant Attorney General, for appellee Industrial Commission.