THE STATE EX REL. SMITH, APPELLEE, *v*. INDUSTRIAL COMMISSION OF OHIO, APPELLEE; OHIO STATE UNIVERSITY, APPELLANT.

[Cite as *State ex rel. Smith v. Indus. Comm.,* 138 Ohio St.3d 312, 2014-Ohio-513.]

*Workers' compensation—R.C. 4123.57(B)—Scheduled-loss benefits for loss of vision and hearing—Evidence does not support a finding that claimant's eyes and ears no longer function—Inability to process sights and sounds due to anoxic brain damage—Appellate court's judgment granting writ of mandamus reversed.*

(No. 2012-0734—Submitted August 20, 2013—Decided February 18, 2014.)

APPEAL from the Court of Appeals for Franklin County, No. 11AP-61, 197 Ohio App.3d 289, 2012-Ohio-1011.

_____

**Per Curiam**.

{¶ 1}   The Ohio State University appeals from a judgment of the Tenth District Court of Appeals that granted a writ of mandamus ordering the Industrial Commission to conduct a new adjudication of George Smith's application requesting compensation for the scheduled loss of his vision and hearing pursuant to R.C. 4123.57(B).

{¶ 2}   Smith has been diagnosed with anoxic brain damage resulting from complications of surgery following an injury he sustained while working for the university.  Tragically, he remains in a persistent vegetative state.  Because of this condition, no test can be performed to determine whether he has suffered an actual loss of sight in one or both eyes or an actual loss of hearing in one or both ears, and the medical evidence shows that Smith is unable to process sights and sounds because of damage to his brain, not because of any injury to his eyes or

ears. However, the General Assembly has not included loss of brain-stem functioning in the schedule for compensation set forth in R.C. 4123.57.

{¶ 3} Accordingly, the Industrial Commission properly denied the claim seeking additional compensation for loss of vision and hearing, and therefore, the judgment of the court of appeals is reversed.

## Facts and Procedural History

{¶ 4} In 1995, George Smith suffered an injury while working for the Ohio State University. The Industrial Commission initially allowed his claim for bilateral inguinal hernia, but postoperative complications from surgery to repair the hernia resulted in brain damage, leaving Smith in a persistent vegetative state. He amended the claim to add the conditions of anoxic brain damage and seizure disorder, and in 1998, the Industrial Commission awarded him benefits for permanent total disability. In 2004, it granted additional benefits for the scheduled loss of use of both of his arms and legs.

{¶ 5} In March 2009, Dr. Bienvenido Ortega examined Smith to determine the extent of his medical impairment. Dr. Ortega noted that Smith showed no comprehension of language and did not respond to verbal questions. He also observed that although Smith's gaze was fixed, his pupils reacted to bright light, signifying that his optic nerves remained intact. Dr. Ortega concluded that Smith had bilateral vision and hearing loss caused by the loss of brain function.

{¶ 6} Smith sought additional scheduled awards for the loss of vision in both eyes and the loss of hearing in both ears. On August 26, 2009, Dr. Ortega issued an addendum to his report in which he stated, "[T]here is no reliable physical test or examination that could be conducted that will determine that the injured worker suffered definite vision and hearing loss as a result of the [anoxic brain damage]. * * * The claimant did not respond to any testing of the visual or hearing senses because of his anoxic brain damage."

**{¶ 7}** On December 28, 2009, Dr. Robert Hess examined Smith at the request of his counsel and agreed that "Smith's hearing and vision cannot be tested due to the claimants' [sic] inability to respond to external stimuli." He also recognized that "the optic nerve, with its central connections in the mid brain which activate a reactive pupil to light[,] * * * is functional." However, he opined that Smith is not able to "process any visual stimulation that is meaningful to him or can be used to improve his life situation," because "no significant relay of the impulses past the brain stem to the visual cortex on either side exists." Dr. Hess therefore concluded that Smith suffered "a loss of function as if the effector organ has been traumatically removed." He also stated that he "[did] not believe that [Smith] hears or is able to receive communication that he can respond to, also because of loss of efferent pathways from the mid brain and auditory nerve to the auditory cortex bilaterally in the posterior superior temporal lobes." Based on his observations, Dr. Hess concluded that Smith had lost the ability to process visual and auditory stimuli and, therefore, for all practical purposes, had lost the ability to see and hear.

**{¶ 8}** After considering the evidence presented, the Industrial Commission denied Smith's request for additional compensation based on the lack of any objective testing showing vision or hearing loss.

**{¶ 9}** Smith filed a complaint for a writ of mandamus in the Tenth District Court of Appeals seeking to compel the Industrial Commission to vacate its order denying his application and to find that he is entitled to awards for loss of use of his eyes and ears. The court of appeals held that for purposes of R.C. 4123.57(B), scheduled loss benefits may be awarded "for a total loss of vision or hearing where the medical evidence considers the practical application of clinical or other data showing a loss of 100 percent or less." 197 Ohio App.3d 289, 2012-Ohio-1011, 967 N.E.2d 259, ¶ 23 (10th Dist.). Because the commission did not

apply that standard, the appellate court issued a writ of mandamus ordering the commission to conduct a new adjudication of Smith's application. *Id.* at ¶ 26.

{¶ 10} The Ohio State University appealed as of right, asserting that R.C. 4123.57(B) permits an award for loss of vision when the claimant presents evidence showing the percentage of vision actually lost and authorizes an award for loss of hearing when the loss is shown to be permanent and total. It contends on this appeal that the Industrial Commission properly denied the additional award because Smith failed to present medical evidence showing any actual loss of vision or hearing.

{¶ 11} Smith maintains that an injured worker may receive an award for loss of vision or hearing despite the lack of definitive evidence quantifying the exact amount of the loss. He asserts that the loss of the brain's ability to process visual or auditory stimuli—i.e., to comprehend sights and sounds—is equivalent to a loss of functioning of the eyes and ears and for all practical purposes he cannot see or hear because he remains in a persistent vegetative state. He notes that in other contexts, the law recognizes that one lacking brain-stem functioning exists in a permanent unconscious state. According to Smith, the medical evidence therefore supports his claim for compensation for loss of vision and hearing because Dr. Ortega and Dr. Hess agreed that Smith cannot use his senses of sight and hearing.

{¶ 12} Therefore, the issue is whether R.C. 4123.57(B) permits an award of compensation for the scheduled loss of vision or hearing when the inability to comprehend sights or sounds results from a lack of brain-stem function.

**Law and Analysis**

{¶ 13} R.C. 4123.57(B) authorizes compensation for a specific number of weeks for the loss of sight and hearing as follows:

4

> For *the loss of the sight of an eye*, one hundred twenty-five weeks.
>
> For the permanent partial *loss of sight of an eye*, the portion of one hundred twenty-five weeks as the administrator in each case determines, based upon the percentage of vision actually lost as a result of the injury or occupational disease, but, in no case shall an award of compensation be made for less than twenty-five per cent loss of uncorrected vision. "Loss of uncorrected vision" means the percentage of vision actually lost as the result of the injury or occupational disease.
>
> For the permanent and total *loss of hearing of one ear*, twenty-five weeks; but in no case shall an award of compensation be made for less than permanent and total loss of hearing of one ear.
>
> For the permanent and total *loss of hearing*, one hundred twenty-five weeks; but, except pursuant to the next preceding paragraph, in no case shall an award of compensation be made for less than permanent and total loss of hearing.

(Emphasis added.) Notably, the statute provides for compensation for the loss of sight of one or both eyes and the loss of hearing of one or both ears. R.C. 4123.57 does not, however, provide for compensation for a loss of brain-stem functioning that precludes the claimant from processing and understanding the visual and auditory stimuli that are received by functioning eyes and ears.

{¶ 14} The court of appeals relied on *State ex rel. AutoZone, Inc. v. Indus. Comm.,* 117 Ohio St.3d 186, 2008-Ohio-541, 883 N.E.2d 372; *State ex rel. Kincaid v. Allen Refractories Co.,* 114 Ohio St.3d 129, 2007-Ohio-3758, 870 N.E.2d 701; and *State ex rel. Sheller-Globe Corp. v. Indus. Comm.*, 66 Ohio St.2d

51, 419 N.E.2d 1084 (1981), to support the proposition that a claimant may receive compensation for a total loss of vision or hearing "where the medical evidence considers the practical application of clinical or other data showing a loss of 100 percent or less." 197 Ohio App.3d 289, 2012-Ohio-1011, 967 N.E.2d 259, ¶ 23. But each of these cases involved injuries to the eyes or ears, not the brain stem. In *AutoZone*, the claimant perforated his left eye with a screwdriver while installing a wiper blade; in *Kincaid*, the claimant sustained an injury to his face that damaged his eyes and also resulted in scintillating scintellens, a condition causing periodic ocular disturbances in the eye; and in *Sheller-Globe Corp.*, the claimant suffered an unspecified injury that resulted in a hearing loss in both ears. In none of these cases was an injured worker awarded compensation for the inability of the brain to process visual or auditory signals caused by a loss of brain-stem function.

{¶ 15} R.C. 4123.57 authorizes compensation for loss of sight when the claimant shows an actual loss of vision as result of injury to the eye and for loss of hearing occasioned by injury to the ear. At the present time, this statute does not authorize compensation for the loss of brain-stem functioning.

{¶ 16} Here, there is no evidence that Smith lost the sight of an eye. Dr. Hess identified no injury to either eye, and he stated that "the optic nerve, with its central connections in the mid brain which activate a reactive pupil to light[,] * * * is functional." Nonetheless, he opined that Smith is not able to "process any visual stimulation that is meaningful to him or can be used to improve his life situation," because "*no significant relay of the impulses past the brain stem to the visual cortex on either side exists*." (Emphasis added.) Dr. Hess thus concluded that Smith suffered "a loss of function as if the effector organ has been traumatically removed." This evidence indicates that Smith has suffered a loss of function in the brain stem that precludes him from processing and understanding visual signals, but his eyes nevertheless still function.

**{¶ 17}** Similarly, Dr. Hess could not detect any actual damage to Smith's ears, yet he asserted that he "[did] not believe that he hears or is able to receive communication that he can respond to, also *because of loss of efferent pathways from the mid brain and auditory nerve to the auditory cortex bilaterally in the posterior superior temporal lobes*." (Emphasis added.) But Dr. Hess admitted that there is no test that can show whether Smith's ears actually function, and thus, his *belief* that Smith cannot hear is speculative. Moreover, the medical evidence presented shows only that Smith is unable to process sounds because of damage to his brain, not because of any damage to his ears.

**{¶ 18}** Smith has already been awarded workers' compensation benefits on the allowed condition of anoxic brain damage, and it appears that any inability to process sights and sounds in his brain directly results from that allowed condition. The medical evidence shows that Smith lacks the ability to process visual and auditory stimuli because there is no relay of the impulses past the brain stem to the visual cortex on either side and because there is a loss of efferent pathways from the mid brain and auditory nerve to the auditory cortex. And there is apparently no test that can be performed to establish definitively whether Smith has an actual loss of sight in one or both eyes or an actual loss of hearing in one or both ears. Thus, the evidence presented to the Industrial Commission does not support a finding that Smith's eyes and ears no longer function.

**{¶ 19}** Smith suffers from a loss of brain-stem functioning, a loss that the General Assembly has not included in the schedule for compensation set forth in R.C. 4123.57. The Industrial Commission therefore properly denied his claim seeking additional compensation for loss of vision and hearing. Accordingly, we reverse the judgment of the court of appeals and reinstate the determination of the Industrial Commission.

Judgment reversed.

O'DONNELL, KENNEDY, SADLER, and O'NEILL, JJ., concur.

O'CONNOR, C.J., and PFEIFER and LANZINGER, JJ., dissent.

LISA L. SADLER, J., of the Tenth Appellate District, sitting for FRENCH, J.

_____

**LANZINGER, J., dissenting.**

{¶ 20} I respectfully dissent and would hold that the Industrial Commission should have considered the medical opinions in Smith's case. I would therefore affirm the judgment of the court of appeals.

{¶ 21} An injured worker may qualify for a number of different benefits under Ohio's workers' compensation statutes. The Industrial Commission awarded permanent-total-disability benefits to George Smith in 1998 due to his persistent vegetative state that resulted from his work-related injury. This benefit, pursuant to R.C. 4123.58, is designed to compensate for the loss of earning capacity for life. *State ex rel. Nestle USA—Prepared Foods Div., Inc. v. Indus. Comm.*, 101 Ohio St.3d 386, 2004-Ohio-1667, 805 N.E.2d 1098, ¶ 8. In 2004, Smith was granted "permanent partial disability" in the form of scheduled-loss benefits under R.C. 4123.57(B) for loss of the use of his arms and legs. While it might appear that an award for permanent *partial* disability duplicated his earlier permanent-*total*-disability benefits, R.C. 4123.58(E) states that "[c]ompensation payable under this section for permanent total disability is in addition to benefits payable under division (B) of section 4123.57 of the Revised Code [for permanent partial disability]." Any permanent-partial-disability award is in the nature of damages and is specifically enumerated in R.C. 4123.57(B). Smith now seeks an award for the permanent loss of sight and the permanent loss of hearing as specified in that section.

{¶ 22} In reversing the judgment of the Tenth District Court of Appeals, the majority holds that because Smith cannot be given a definitive test for sight and hearing due to his persistent vegetative state, "the evidence presented to the Industrial Commission does not support a finding that Smith's eyes and ears no

8

longer function." Majority opinion at ¶ 18. While it is true that the loss of brain-stem functioning is not listed in the schedule for compensation set forth in R.C. 4123.57(B), the schedule also does not specifically list loss of eyes or loss of ears, as it does other parts of the body. Instead, the schedule lists "loss of sight" and "loss of hearing," which are different.

{¶ 23} Smith's scheduled-loss compensation for the total loss of use of his arms and legs did not require a percentage of loss to be shown, but the statutory standard is different when the loss involves vision and hearing. For a less than total loss of vision, R.C. 4123.57(B) authorizes compensation "based upon the percentage of vision actually lost as a result of the injury or occupational disease, but, in no case shall an award of compensation be made for less than twenty-five per cent loss of uncorrected vision." For the loss of hearing, R.C. 4123.57(B) authorizes an award if the loss is permanent and total in one or both ears.

{¶ 24} We have been flexible in determining the proof necessary to establish a total loss of vision or hearing under R.C. 4123.57(B). We have found a total loss of vision or hearing for purposes of R.C. 4123.57(B) when the loss was clinically diagnosed as less than 100 percent. In *State ex rel. AutoZone, Inc. v. Indus. Comm.,* 117 Ohio St.3d 186, 2008-Ohio-541, 883 N.E.2d 372, we held that a diagnosis of legal blindness in one eye equated to the loss of sight of an eye for purposes of R.C. 4123.57(B), and in *State ex rel. Kincaid v. Allen Refractories Co.,* 114 Ohio St.3d 129, 2007-Ohio-3758, 870 N.E.2d 701, we determined that a loss of vision occurring on an intermittent basis was permanent and total for purposes of R.C. 4123.57(B).

{¶ 25} In *State ex rel. Sheller-Globe Corp. v. Indus. Comm.*, 66 Ohio St.2d 51, 419 N.E.2d 1084 (1981), we affirmed the judgment in *State ex rel. Sheller-Globe Corp. v. Indus. Comm.*, 10th Dist. Franklin No. 80AP-194, 1980 WL 353639 (Aug. 21, 1980), in which the court of appeals stated:

> Within the context of the statute, the word "hearing" connotes the ability to comprehend everyday speech. In other words, *hearing connotes the ability to comprehend the spoken word for the purpose of communication with others*. The mere fact that a person is able to discern certain sounds of certain frequencies at certain intensities does not prevent a finding of a total loss of hearing if the person is unable to hear and comprehend the spoken word even when spoken extremely loud.

(Emphasis added.) *Id.* at *3.

{¶ 26} Smith suffered his work-related injury in December 1995, and his claim was initially allowed for bilateral inguinal hernia. After surgery to repair the hernia, he suffered postoperative complications that led to brain damage. His claim was later amended to add the conditions of anoxic brain damage and seizure disorder.

{¶ 27} In March 2009, Dr. Bienvenido Ortega examined Smith to determine the extent of his medical impairment. Dr. Ortega noted that Smith showed no comprehension of language and did not respond to verbal questions. He also noted that Smith's gaze was fixed but that his pupils reacted to bright light, which signifies that his optic nerves are intact. Dr. Ortega concluded that Smith had bilateral vision and hearing loss but that the losses were due to the loss of his brain function.

{¶ 28} On December 28, 2009, Dr. Robert Hess examined Smith. Dr. Hess agreed with Dr. Ortega that Smith's hearing and vision could not be tested due to his inability to respond to external stimuli. Dr. Hess stated that he had observed Smith's pupils respond to light but that that response was merely a reflex. Dr. Hess determined that Smith's brain could not process any visual

stimulation or receive auditory communication. Thus, Dr. Hess concluded, Smith suffered the loss of his visual and auditory functions for all practical purposes.

{¶ 29} This medical evidence established that Smith is unable to see or hear and that the losses are the result of his allowed condition, i.e., the anoxic brain damage. I would hold that this medical evidence should have been considered by the Industrial Commission in determining whether Smith has established the right to additional compensation as a result of his allowed condition. For this reason, I dissent and would affirm the judgment of court of appeals and adopt its analysis.

O'CONNOR, C.J., and PFEIFER, J., concur in the foregoing opinion.

_____

Malek & Malek and Douglas C. Malek, for appellee George Smith.

Michael DeWine, Attorney General; and Dinsmore & Shohl, L.L.P., Michael L. Squillace, and Christen S. Hignett, for appellant.

_____