[Cite as *State ex rel. Dobson v. Indus. Comm.*, 2022-Ohio-3796.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel.<br>Gerald Dobson deceased c/o<br>dependent daughter Catelyn Weinclaw et al., | : | |
| | : | |
| Relators, | : | No. 21AP-83 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on October 25, 2022

**On brief:** *David J. Steiger*, for relator. **Argued:** *David J. Steiger*.

**On brief:** *Dave Yost*, Attorney General, and *Natalie J. Tackett*, for respondent Industrial Commission of Ohio. **Argued:** *Natalie J. Tackett*.

**On brief:** *Brennan, Manna & Diamond, LLC, Jeffrey C. Miller*, and *Russell T. Rendall*, for respondent Graves Lumber Co.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, P.J.

{¶ 1} Relators, Gerald Dobson, deceased ("decedent"), Catelyn Weinclaw, Abbi N. Dobson, and Hannah E. Dobson (care of Melody Dobson) ("claimants"), initiated this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying claimants'

request for payment of a scheduled loss award for loss of sight in two eyes, pursuant to R.C. 4123.57(B), and to enter an order granting the compensation.

{¶ 2}   Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred the matter to a magistrate of this court.  The magistrate issued the appended decision, including findings of fact and conclusions of law.  The magistrate determined the commission had some evidence to support its determination that claimants were not entitled to the requested loss of use compensation as a result of decedent's anoxic brain injury.  Thus, the magistrate recommends we deny claimants' request for a writ of mandamus.

{¶ 3}   Claimants have filed objections to the magistrate's decision.  Therefore, we must independently review the decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law."  Civ.R. 53(D)(4)(d).  Through their objections, claimants argue the magistrate erroneously found that decedent suffered an injury to his brainstem rather than damage to his cerebral cortex.  Because of this alleged error, claimants assert the commission and the magistrate improperly relied on the Supreme Court of Ohio's decision in *State ex rel. Smith v. Indus. Comm.*, 138 Ohio St.3d 312, 2014-Ohio-513, as a basis to deny the claim for loss of vision compensation under R.C. 4123.57(B).

{¶ 4}   Though claimants identify portions of the magistrate's decision discussing brain stem injuries, we do not agree with claimants that the magistrate made a finding that decedent suffered a brain stem injury and that such injury caused the vision loss.  Rather, the magistrate found decedent suffered an anoxic brain injury and repeatedly discussed damage to the cerebral cortex.  The magistrate's references to a brain stem injury were in the context of summarizing the report of the reviewing physician and did not amount to a finding that decedent suffered a brain stem injury rather than a cerebral cortex injury.

{¶ 5}   Moreover, we find claimants' focus on whether the injury was to the brain stem or to the cerebral cortex is misplaced.  As this court has recently reiterated, "*Smith* held that R.C. 4123.57(B) does not authorize loss of use compensation when a loss of brain function is the cause of the vision loss rather than damage to the eye structure itself." *State ex rel. Harris v. Indus. Comm.*, 10th Dist. No. 21AP-60, 2022-Ohio-3149, ¶ 2, citing *Smith*.  Thus, although claimants attempt to distinguish *Smith* on the basis that the injury in *Smith*

was to the brain stem while the injury here is to the cerebral cortex, claimants cannot avoid the fatal flaw to their reasoning: under either situation, decedent did not suffer injury or damage to the eye structure itself. *Harris* at ¶ 2 ("relator's loss of vision was not attributable to damage to the structure or function of relator's eyes proper, but was due to the loss of brain function"). Accordingly, we agree with the magistrate that *Smith* is applicable and that R.C. 4123.57(B) does not authorize loss of use compensation when the cause of the vision loss is loss of brain function rather than actual damage to the eye structure itself. *Harris* at ¶ 7. We, therefore, overrule claimants' objections to the magistrate's decision.

{¶ 6} Following an independent review of this matter, we find the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny relators' request for a writ of mandamus.

*Objections overruled;*
*writ of mandamus denied.*

KLATT and McGRATH, JJ., concur.

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. | : | |
| Gerald Dobson deceased c/o | | |
| dependent daughter Catelyn Weinclaw et al., | : | |
| Relators, | : | |
| v. | : | No.  21AP-83 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on April 12, 2022

*David J. Steiger*, for relator.

*Dave Yost*, Attorney General, and *Natalie J. Tackett*, for respondent Industrial Commission of Ohio.

*Brennan*, *Manna & Diamond*, *LLC*, *Jeffrey C. Miller*, and *Russell T. Rendall*, for respondent Graves Lumber Co.

IN MANDAMUS

{¶ 7}   Relators, Gerald Dobson, deceased ("decedent"), Catelyn Weinclaw, Abbi N. Dobson, and Hannah E. Dobson (care of Melody Dobson) ("claimants"), have filed this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that denied claimants'

request for payment of a scheduled loss award for loss of use of loss of sight in two eyes, pursuant to R.C. 4123.57(B), and to enter an order granting such compensation.

Findings of Fact:

{¶ 8} 1. The decedent was injured on August 29, 2018, in the course of and arising from his employment with respondent, Graves Lumber Company ("employer"), when co-workers accidentally pushed lumber off of decedent's truck, trapping decedent under a pile of lumber. The co-workers did not realize that decedent was under the lumber for approximately ten minutes. The decedent died on September 6, 2018, after family removed him from a ventilator. Claimants, decedent's dependent daughters, applied for death benefits, which the Ohio Bureau of Workers' Compensation ("BWC") granted.

{¶ 9} 2. In an August 30, 2018, progress note, Ari Wachsman, M.D., indicated the following: (1) EEG shows profound suppression of background activity with myoclonus and generalized epileptiform discharges, consistent with cerebral anoxic injury; (2) decedent seems to have had a prolonged downtime, and the presence of postanoxic myoclonus is a negative prognostic sign; and (3) decedent had the following impairments: trauma, hemorrhagic shock, pulmonary contusion, cardiac arrest, multiple skeletal fractures, anoxic brain injury with encephalopathy, and ventilator dependent respiratory failure.

{¶ 10} 3. The September 6, 2018, Akron General Hospital expiration summary indicated the following diagnoses: trauma, hypovolemic shock, left open femur fracture, closed tibia fracture, rib fractures, respiratory failure after trauma, pelvis crush injury, open-book pelvic fracture, cardiac arrest due to trauma, rectal trauma secondary to pelvic fracture, brain anoxic injury, traumatic hemorrhagic shock, acute renal failure, seizures, and cardiogenic shock.

{¶ 11} 4. Claimants first filed a request for compensation for total loss of use of both arms and both legs. The bureau granted the award, and that determination is not under review herein.

{¶ 12} 5. On May 17, 2019, Dr. Wachsman issued a report, in which he found the decedent's loss of use of vision and hearing between the date of injury and date of death was a permanent and total loss of use due to his anoxic brain injury.

{¶ 13} 6. On July 11, 2019, Mark Loomus, M.D., issued a medical review ordered by the BWC, in which Dr. Loomus made findings related to the loss of use of all four extremities due to the injuries sustained.

{¶ 14} 7. On August 15, 2019, claimants filed a request for compensation for the permanent and total loss of vision in both eyes and hearing in both ears, pursuant to R.C. 4123.57(B).

{¶ 15} 8. On September 14, 2019, Dr. Loomus issued an addendum, in which he found the following: (1) decedent sustained a loss of hearing and vision as a result of the injury; (2) decedent's loss of hearing was due to brainstem dysfunction (as his ears were not amputated from the industrial injury); (3) decedent did not suffer from bilateral enucleation of his eyes, so his vision loss was not from direct damage to his eyes, however brainstem dysfunction cannot cause actual vision loss (as the visual pathways do not directly involve the brainstem); and (4) decedent's vision loss was due to significant and severe anoxic damage to his cerebral cortices.

{¶ 16} 9. On July 2, 2020, Dr. Wachsman issued a report, in which he found the following: (1) Dr. Loomus is correct that vision loss cannot result from damage to the brainstem; (2) it is correct that the visual and hearing loss did not arise from direct injury to the eyes or ears but rather from damage to the brain; (3) whether the hearing loss was brainstem or cortical is not known, as testing to determine the specific site of dysfunction would not have been appropriate in that clinical setting and would not have changed medical management; and (4) generally speaking, an anoxic brain injury usually will significantly damage the cortex before the brainstem, which is what occurred in decedent's case—the anoxic brain injury severely damaged the cerebral cortex that includes the occipital lobe that contains the main visual centers causing permanent and total vision loss.

{¶ 17} 10. On July 10, 2020, a hearing on claimants' motion was held before a district hearing officer ("DHO"). In an order mailed July 18, 2020, the DHO found the following: (1) the scheduled award for the total loss of hearing in both ears and total loss of vision in both eyes is denied; (2) the representative for claimants conceded at the hearing that there was no actual damage to decedent's eyes and ears as a result of the injury; (3) the representative for claimants acknowledged, consistent with medical

reports on file, that the loss of hearing and vision sustained from the injury was due to brain trauma; (4) according to the September 14, 2019, report of Dr. Loomus, decedent's loss of hearing was due to brainstem dysfunction; (5) in *State ex rel. Smith v. Indus. Comm.*, 138 Ohio St.3d 312, 2014-Ohio-513, the Supreme Court of Ohio found that the claimant was not entitled to compensation for total loss of vision and hearing because R.C. 4123.57(B) does not provide for compensation for a loss of brainstem functioning; (6) this case is not distinguishable from *Smith* because the vision loss in *Smith* was caused by damage to the brainstem and the vision loss in the present case was caused by damage to the cerebral cortex; and (7) *Smith* reasoned that the decedent's vision and hearing loss was not compensable not because a brainstem injury is specifically excluded from the statute, but because the statute does not provide for compensation for a loss of brainstem function, and R.C. 4123.57(B) likewise does not provide for compensation for a loss of cerebral-cortex function. Claimants appealed.

{¶ 18} 11. On July 27, 2020, Bienvenido Ortega, M.D., issued a report based upon a physician file review initiated by claimants, in which he found the following: (1) decedent sustained a permanent and total loss of all ear and eye functioning from his date of injury until the date of his death; (2) the Glasgow Coma Scale ("GCS"), which is the summation of scores for eye, verbal, and motor responses, was noted to be at a three, and that never changed; (3) the minimum GCS score is a three, which indicates a deep coma or a brain-dead state; (4) the GCS demonstrates decedent had no eye-opening response, which means he had no functioning of either eye; (5) non-reactivity to light and no corneal reflex and no oculocephic reflex findings noted in the records are also indicative of no functioning of either eye; (6) according to Dr. Loomus's September 11, 2019, report and the hospital records, decedent's examinations repeatedly noted findings of fixed and dilated pupils that are non-reactive to light, no pupillary response, no corneal reflexes, and no oculocephalic reflexes, all of which mean not only total blindness but also no functioning of the eyes; (7) the occipital lobe that is part of the cerebral cortex was significantly, severely, and permanently damaged, and this damage caused permanent and total loss of all functioning of both eyes; (8) severe damage to the cerebral cortex, specifically the occipital lobe, would result in the permanent and total loss of all functioning and use of the eyes; (9) the severe damage to the cerebral cortex caused an

actual loss of functioning of the eyes the same as if his eyes were directly injured; (10) due to the severe cerebral cortex injury, the eyes did not function at all; (11) decedent's situation is not one in which the brain injury caused an inability to process the visual impulses being received by his eyes; (12) the severe and significant damage to the cerebral cortex, notably the occipital lobe, caused total loss of functioning of both eyes; (13) decedent's situation is not one in which brainstem dysfunction caused a lack of a relay of impulses past the brainstem to the visual cortex; (14) in decedent's case, the injury caused severe and significant damage to the actual visual cortex, which resulted in the actual loss of functioning of the eyes; (15) there was no function of either eye; and (16) decedent's situation was not one in which decedent's brain could not process visual stimulation or where there were no relays of visual impulses past the brainstem to the visual cortex.

{¶ 19} 12. On October 14, 2020, a hearing on claimants' appeal was held before a staff hearing officer ("SHO"). On October 27, 2020, the SHO issued an order, in which the SHO found the following: (1) the order of the DHO is modified; (2) claimants' C-86 motion is denied; (3) the claim is disallowed for scheduled loss of hearing and bilateral hearing; (4) there is insufficient medical evidence to support that the decedent had a loss of hearing and vision due to the allowed physical injuries; (5) the contemporaneous medical evidence does not support any testing to establish that there was any loss of hearing or vision due to the injury versus the loss of brain function; (6) the SHO relies upon the September 14, 2019, report of Dr. Loomus and *Smith*; (7) there is no evidence that decedent suffered from a loss of vision or hearing as a result of the injury in this claim; (8) decedent's loss of hearing and loss of vision were due to the brainstem injury and not independent of the brain injury; and (9) there is no provision in the statute for loss of brainstem function or loss of cerebral-cortex function.

{¶ 20} 13. Claimants filed an appeal, which was refused by the commission in a November 19, 2020, order.

{¶ 21} 14. Claimants filed a request for reconsideration, which the commission denied in a December 23, 2020, order.

{¶ 22} 15. On February 26, 2021, claimants filed a complaint for writ of mandamus requesting that this court order the commission to grant their motion for loss of use award.

Conclusions of Law and Discussion:

{¶ 23} The magistrate recommends that this court deny claimants' request for a writ of mandamus.

{¶ 24} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 25} A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 26} R.C. 4123.57(B) authorizes scheduled compensation to a claimant for the total loss of a body part, such as the total loss of an arm, leg, ear, or eye. "Loss" within the meaning of the statute includes not only amputation, but also the loss of use of the affected body part. *State ex rel. Wyrick v. Indus. Comm.*, 138 Ohio St.3d 465, 2014-Ohio-541, ¶ 10, citing *State ex rel. Moorehead v. Indus. Comm.*, 112 Ohio St.3d 27, 2006-Ohio-6364. An injured worker claiming loss of use under R.C. 4123.57(B) bears the burden of showing that the loss of use is complete and permanent. *State ex rel. Carter v. Indus. Comm.*, 10th Dist. No. 09AP-30, 2009-Ohio-5547.

{¶ 27} In the present case, claimants argue that the record contains no evidence that decedent's loss of use of his eyes and loss of vision was due to a brainstem injury. Claimants assert that nowhere in Dr. Loomus's September 14, 2019, report does it state that the loss of vision was caused by a brainstem injury, and, in fact, the report specifically states that decedent's vision loss was not due to a brainstem injury or brainstem dysfunction. Claimants also point to Dr. Ortega's July 27, 2020, report to distinguish the brainstem injury in *Smith* versus the cerebral cortex injury in the present case. Furthermore, claimants contend that this case is analogous to this court's prior decision

in *State ex rel. Arberia, LLC v. Indus. Comm.*, 10th Dist. No. 13AP-1024, 2014-Ohio-5351, wherein this court upheld the commission's granting the loss of use of hearing and vision before the decedent-worker's death as a result of cerebral cortex damage and destruction of cortical tissue and cerebral processing signals, despite the lack of a test to determine if the decedent-worker could actually see or hear before his death.

{¶ 28} The SHO relied upon the September 14, 2019, report of Dr. Loomus and *Smith* in finding that there is no evidence that decedent suffered from a loss of vision as a result of the injury in this claim; found decedent's loss of vision was due to the brainstem injury and not independent of the brain injury; and found there is no provision in the statute for loss of brainstem function or loss of cerebral-cortex function.

{¶ 29} With regard to Dr. Loomus's September 14, 2019, report, Dr. Loomus admitted that decedent did not suffer from bilateral enucleation of his eyes, so his vision loss was not from direct damage to his eyes. Dr. Loomus opined that decedent's vision loss was due to significant and severe anoxic damage to his cerebral cortices and not due to brainstem dysfunction, because brainstem dysfunction cannot cause actual vision loss, as the visual pathways do not directly involve the brainstem.

{¶ 30} In *Smith*, the worker suffered anoxic brain damage resulting from complications of surgery following a work-related injury. With regard to his claim for loss of use of his eyes, the court found that no tests could be performed to determine whether he had suffered an actual loss of sight in one or both eyes, but the medical evidence showed that the worker was unable to process sights because of damage to his brain, not because of any injury to his eyes. The medical evidence showed that the worker lacked the ability to process visual stimuli because there was no relay of the impulses past the brainstem to the visual cortex on either side. In other words, the worker's eyes were not damaged and could still function, but the signals the eyes received could not be processed by his brain. The Supreme Court found that the General Assembly has not included loss of brainstem functioning in the schedule for compensation set forth in R.C. 4123.57, and the commission properly denied the claim for loss of use of his eyes.

{¶ 31} In *Arberia*, the decedent worker fell from a roof and landed on his head. He had facial trauma, brain matter oozing from his nose, head injuries, and spinal injuries. As pertinent here, claimant sought loss of use compensation for both eyes. The medical

evidence showed that the use of the eyes would have been useless in the face of a cerebrum that was non-functional and unable to obtain any recovery of consciousness and therefore, actual visual processes; the industrial accident led to this result through the extensive destruction of cortical tissue; the presence of herniation and extensive bleeding, which eliminated the ability of the injured worker to regain consciousness and hence, any use of vision; and the right eye had a large displacing hematoma that would have further diminished any ability for useful visual function. The evidence demonstrated that the decedent-worker sustained extensive disruption of all cerebral functions. The commission granted loss of use of both eyes.

{¶ 32} After a review of *Smith*, *Arberia*, and Dr. Loomus's September 14, 2019, report, the magistrate finds there was some evidence to support the SHO's determination. Although Dr. Loomus attempted to draw a distinction between loss of vision due to anoxic damage causing brainstem dysfunction versus anoxic damage causing cerebral cortex dysfunction, the SHO specifically addressed this attempted distinction in his order and rejected it. The SHO found that decedent's loss of vision was not distinct from his "brain injury," and there is no provision in R.C. 4123.57(B) for loss of cerebral-cortex function. Thus, in rejecting this distinction, the SHO included cerebral-cortex injury within the scope of general "brain injury." The SHO relied upon *Smith*, which addressed this same type of argument. The court in *Smith* found that the medical evidence showed that the worker was unable to process sights (visual stimuli) because of damage to his brain. Like an injury to the brainstem portion of the brain, an injury to the cerebral-cortex portion of the brain prevents the person from processing visual sights and stimuli. Just as the court in *Smith* found that the General Assembly has not included loss of brainstem functioning in the schedule for compensation set forth in R.C. 4123.57, the legislature has not included loss of cerebral-cortex function in the schedule for compensation, as noted by the SHO.

{¶ 33} *Arberia* is also distinguishable. Although claimants contend *Arberia* is analogous, it contains key differences that preclude it from serving as precedent for the present case. The magistrate in *Arberia* noted that the medical evidence indicated significant damage not only to decedent's brain, but to both eyes; and even though decedent's lack of consciousness made it impossible to determine the exact extent of his visual losses, there was medical evidence that those organs were significantly damaged.

The medical evidence in the present case is not comparable to that in *Arberia*. *Arberia* also did not address or specifically analyze whether loss of vision based upon anoxic brain damage is compensable as a loss of use.

{¶ 34} Finally, the magistrate notes that the SHO indicated Dr. Loomus's report was issued on September 14, 2020, when the correct date is September 14, 2019. However, given that the parties do not dispute to which report the SHO was referring, and the SHO's simple clerical error caused no confusion with the determination on the merits or among the parties, issuing a limited writ of mandamus to correct this trivial factual error would be an inefficient use of resources and serve no practical purpose. *See State ex rel. Casey v. Indus. Comm.*, 10th Dist. No. 20AP-247, 2022-Ohio-532, ¶ 82 (SHO's erroneous reference to "upper" extremity instead of "lower" extremity, without any indication that the SHO was confused about which body part was actually at issue in the case, was merely a clerical error for which remand to the commission to correct would be a vain act because the same result would be inevitable).

{¶ 35} Accordingly, it is the magistrate's decision that this court should deny claimants' petition for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).