[Cite as *State ex rel. Byk v. Indus. Comm.*, 2024-Ohio-1598.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Pin Cha Byk, | : | |
| Relator, | : | No. 17AP-511 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on April 25, 2024

**On brief:** *Dean R. Wagner* and *Vincent J. DeLorenzo*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *John R. Smart*, for respondent Industrial Commission of Ohio.

**On brief:** *Morrow & Meyer*, *LLC*, and *Tod T. Morrow*, for respondent Republic Steel.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

EDELSTEIN, J.

{¶ 1} Relator, Pin Cha Byk, the surviving spouse of Bohdanus Byk, has filed an original action seeking a writ of mandamus from this court ordering respondent, the Industrial Commission of Ohio ("commission"), to vacate its order denying her request for scheduled-loss compensation under R.C. 4123.60 and 4123.57(B) for her late husband's loss of use of his extremities due to an industrial accident. At issue is whether the Supreme Court of Ohio's decision in *State ex rel. Smith v. Indus. Comm.*, 138 Ohio St.3d 312, 2014-Ohio-513—a case involving a claim for compensation under R.C. 4123.57(B) for loss of sight

and hearing—categorically precludes an award for loss of use of the limbs when medical evidence shows that loss is the result of brain injury, not direct trauma to the extremities. Because we ultimately conclude it does not, we must also determine whether the commission's erroneous application of *Smith* as the sole basis for denying Mr. Byk's 2014 loss-of-use claim while he was alive has any collateral estoppel consequences on Ms. Byk's 2016 request for scheduled-loss compensation that had accrued and would have been due to Mr. Byk at the time of his 2015 death. Notably, we did not previously consider the propriety of the commission's reading of *Smith* because Mr. Byk died while his mandamus action contesting the commission's 2014 denial of his loss-of-use claim was pending before this court. In any event, we conclude Ms. Byk's claim for accrued benefits is not precluded by the commission's 2014 denial of Mr. Byk's request for scheduled-loss compensation.

{¶ 2} For the following reasons, we grant a limited writ of mandamus directing the commission to vacate its November 3, 2016 order and to issue a new order adjudicating the merits of Ms. Byk's application consistent with law and this decision.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 3} On August 20, 2012, Mr. Byk was employed as a laborer by respondent Republic Steel and working on a platform when he slipped, fell backwards off the platform from a height of approximately 6 to 8 feet, and landed on cement, sustaining blunt trauma to his head and ribs. (*See* Stip. Evid.[1] at 73.) Mr. Byk sustained multiple fractured ribs and severe head injuries which, in turn, resulted in significant bleeding and swelling in his brain. (Stip. Evid. at 73-78.) To remove multiple blood clots and ease significant pressure on his brain, Mr. Byk underwent a right frontal decompressive craniectomy (removal of a section of the skull) with drainage. (Stip. Evid. at 76-78.) The attending neurosurgeon was unable to close the opening in the skull because of the significant intracranial pressure buildup. (Stip. Evid. at 77-78.)

{¶ 4} Following surgery, Mr. Byk remained in a persistent vegetative state for almost three years, until his death on May 3, 2015. (*See, e.g.*, Stip. Evid. at 5-6.) Before his death, the commission recognized Mr. Byk's workers' compensation claim for the following

---

[1] The parties filed stipulated evidence on July 15, 2022 and supplemented the stipulated record by additional filings on July 15, 2022 and September 7, 2022. Because the record is consecutively paginated across the three filings, "Stip. Evid." refers to the entire stipulated record.

conditions: subarachnoid hemorrhage; subdural hemorrhage; intracerebral hemorrhage; fractured left ribs 3-6; subdural hematoma; intraparenchymal hematoma; subarachnoid hemorrhage with significant traumatic brain injury status post-decompressive craniotomy with resultant persistent vegetative state; neuralgic bowel; bladder dysfunction; and chronic respiratory failure. (*See* Stip. Evid. at 18, 38.)

### A. The 2013 and 2014 Applications for Scheduled-Loss Compensation

{¶ 5} Before his death, in 2014, Mr. Byk applied for scheduled-loss compensation under R.C. 4123.57(B) for his loss of use of his bilateral arms, hands, legs, and feet. (*See* Stip. Evid. at 1-9.) Evidence presented at the February 18, 2014 hearing before a district hearing officer ("DHO") on this claim established that Mr. Byk's lack of purposeful movement and inability to use any of his extremities was due to his brain injury and the subsequent neurological sequelae from that injury. (Stip. Evid. at 3-9, 15, 23-33. *See also* Stip. Evid. at 36.) Although evidence suggested Mr. Byk attempted some purposeful movements in the summer of 2013, by the time of the February 2014 hearing, Mr. Byk's condition had deteriorated to the point where he was nonresponsive. (Stip. Evid. at 24, 181-97.)

{¶ 6} At the hearing, the parties generally agreed that Mr. Byk's loss of function of the extremities was permanent. (*See* Stip. Evid. at 6-9, 15, 24-27.) The parties also agreed that Mr. Byk's loss of function was due to brain injury, and not the result of direct trauma to the extremities or a spinal cord injury. (*See* Stip. Evid. at 3-9, 15, 27-29, 31-32. *See also* Stip. Evid. at 36.)

{¶ 7} By order of the DHO, the commission awarded Mr. Byk compensation for the scheduled loss of his bilateral upper and lower extremities—arms, hands, legs, and feet— pursuant to R.C. 4123.57(B) on February 18, 2014. (Stip. Evid. at 18-19.)

{¶ 8} That same day, the Ohio Supreme Court issued its decision in *Smith*, 2014-Ohio-513, holding that "in the absence of injury to the eyes and ears, evidence of a brain injury that precludes definitive visual and auditory testing is insufficient to support a finding that the eyes and ears no longer function and, therefore, will not support an award for loss of sight and hearing under R.C. 4123.57(B)." *State ex rel. Walters v. Indus. Comm.*, __ Ohio St.3d __, 2024-Ohio-552, ¶ 27 ("*Walters II*"), citing *Smith* at ¶ 2. However, as explained more below, "the standard for ***proving*** the requisite degree of loss of a body part

differs from the specific statutory standards applicable to loss of sight and loss of hearing."
(Emphasis sic and added.) *Walters II* at ¶ 31. *See* R.C. 4123.57(B).

{¶ 9} Republic Steel appealed from the DHO's order awarding scheduled-loss
compensation, arguing the holding in *Smith* should be extended to claims involving the loss
of use of extremities when medical evidence shows that loss is because of brain damage,
not direct injury to the affected body part. (*See* Stip. Evid. at 44-48.)

{¶ 10} That appeal was heard by a staff hearing officer ("SHO") on April 3, 2014.
(*See* Stip. Evid. at 41-61.) Following that hearing, the SHO vacated the DHO's February
2014 order and denied Mr. Byk's request for scheduled-loss compensation based solely on
her extension of the holding in *Smith*. (Stip. Evid. at 38-40.) The SHO broadly construed
*Smith* as holding that R.C. 4123.57(B) "does not authorize compensation for the loss of
brain stem functioning." (Stip. Evid. at 39.) Finding the medical evidence showed that Mr.
Byk suffered from the loss of brain stem function and that his extremities had no purposeful
movement due to the lack of higher cortical functioning, the SHO concluded that, on the
authority of *Smith*, Mr. Byk was not entitled to receive scheduled-loss compensation under
R.C. 4123.57(B) for the loss of use of his extremities. (Stip. Evid. at 39.) *Compare Walters
II* at ¶ 19 (acknowledging the requests for scheduled-loss compensation in *Smith* were
based on the contention that the injured worker suffered from a lack of cerebral-cortical
functioning, not a loss of brain stem functioning).

{¶ 11} Notably, in this case, the SHO did not find the medical evidence presented
failed to show Mr. Byk's bilateral upper and lower extremities were no longer functional.
(*See* Stip. Evid. at 38-40.) Thus, the SHO's basis for vacating the DHO's order and denying
Mr. Byk's scheduled-loss claim in 2014 was exclusively grounded in law—to wit, the
application of *Smith* to Mr. Byk's claim for loss of use of his arms, legs, hands, and feet
under R.C. 4123.57(B).

## B. The 2015 Mandamus Actions

{¶ 12} After the commission refused further administrative review of the SHO's
April 2014 denial of his claim (Stip. Evid. at 62-63), Mr. Byk filed a mandamus action in
this court under case No. 15AP-157. However, while that case was pending, Mr. Byk
succumbed to his August 2012 industrial injuries on May 3, 2015. (Stip. Evid. at 64.)

Accordingly, we dismissed that case without prejudice on May 13, 2015 pursuant to Civ.R. 41(A).

{¶ 13} After Mr. Byk's death, the previously dismissed mandamus complaint filed in case No. 15AP-157 was refiled under case No. 15AP-992 in October 2015, with Mr. Byk still named as relator in that action. Shortly thereafter, Ms. Byk, in her capacity as the Executrix of the Estate of Bohdanus Byk, was substituted as the relator. We stayed proceedings in case No. 15AP-992 pending the outcome of the commission's administrative review process on Ms. Byk's claim for accrued but unpaid scheduled-loss compensation under R.C. 4123.60 and 4123.57(B) for Mr. Byk's loss of use of his extremities.

{¶ 14} On April 20, 2016, Ms. Byk filed a C-86 motion for a scheduled loss-of-use award. (Stip. Evid. at 253-54.) The DHO denied that motion on June 27, 2016. (Stip. Evid. at 258-59.) On review, we note the DHO's reason for denying Ms. Byk's motion is not stated in the order. (*See* Stip. Evid. at 258-59.) In any event, the SHO affirmed the DHO's denial on August 10, 2016 "[b]ased on the 04/03/2014 [SHO] decision." (Stip. Evid. at 263.) Thus, the SHO's 2016 denial of Ms. Byk's claims was ***solely*** based on the continued application of *Smith* as barring Mr. Byk's entitlement to scheduled-loss benefits under R.C. 4123.57(B) because his loss of use was the result of brain injury and not direct trauma to the extremities. (*See* Stip. Evid. at 263-64, referencing Stip. Evid. at 38-40.)

{¶ 15} The commission accepted further administrative review of Ms. Byk's claim, but ultimately denied Ms. Byk's request for scheduled-loss compensation without a hearing on November 3, 2016. (Stip. Evid. at 272-91, 295, 317-19.) Noting that Mr. Byk's initial request for a scheduled-loss award was "adjudicated and denied by the Staff Hearing Officer order, issued 04/0[3]/2014," the commission found as follows:

> Because the [initial] request was denied by a final decision at the administrative level, [Mr. Byk's] entitlement to the loss-of-use award has already been determined and denied, and based on this action, there is no award for the loss of use of the extremities he would be entitled to and no accrued compensation for a loss of use of the extremities. Therefore, there is no entitlement award or accrued compensation payable pursuant to R.C. 4123.6[0] to Surviving Spouse. The Surviving Spouse is collaterally estopped from receiving an award for [Mr. Byk's] loss of use of the extremities under R.C. 4123.57 based on the denial of [Mr. Byk's] request for this award by the Staff Hearing Officer order, issued 04/0[3]/2014.

(Stip. Evid. at 317-18.)

{¶ 16} We were notified about the conclusion of the commission's administrative hearing process in February 2017. Following partial briefing and delays, the previously stayed mandamus action brought under case No. 15AP-992 and litigated by Ms. Byk in her capacity as the executrix of Mr. Byk's estate returned to our active docket in 2021 and was heard by a magistrate of this court on June 25, 2021.

{¶ 17} Notably, Ms. Byk, in her capacity as the surviving spouse of Mr. Byk, contemporaneously pursued a separate mandamus action under case No. 17AP-511, which is the matter presently before us. Her 2017 mandamus complaint challenges the propriety of the commission's *2016* proceedings and determinations of her claim, as a surviving spouse, for accrued but unpaid scheduled-loss compensation under R.C. 4123.60 and 4123.57(B) for Mr. Byk's loss of use of his extremities.

{¶ 18} At issue in case No. 15AP-992, however, was whether Mr. Byk's estate (through Ms. Byk as executrix) could pursue, in place of Mr. Byk postmortem, a mandamus action challenging the commission's *2014* denial of Mr. Byk's claim for scheduled loss-of-use benefits. Again, Mr. Byk died before we had the occasion to consider in case No. 15AP-157 the propriety of the SHO's April 3, 2014 finding that *Smith* precludes a loss-of-use award for extremities under R.C. 4123.57(B) when an injured worker's loss of function is the result of a brain injury.

{¶ 19} Ultimately, we determined that the action itself was procedurally improper. *See State ex rel. Byk v. Indus. Comm.*, 10th Dist. No. 15AP-992, 2022-Ohio-136 ("*Byk I*"). More precisely, we found that because the mandamus action brought under case No. 15AP-992 was commenced after Mr. Byk's death, his estate lacked standing to pursue the mandamus action on his behalf. This is because Mr. Byk's 2014 claim for scheduled loss-of-use benefits abated upon his death. *See Byk I* at ¶ 6-10.

{¶ 20} Significantly, in *Byk II*, we declined to address the merits of the commission's legal reasoning for denying Mr. Byk's loss-of-use claim. Rather, we found Ms. Byk would be able to obtain judicial review of a final order of the commission in her ongoing R.C. 4123.60 proceedings, which are the subject of this case. *See Byk I* at ¶ 11-13. Accordingly, we dismissed the petition for writ of mandamus in case No. 15AP-992 pursuant to Civ.R. 12(B)(1).

### C. The 2017 Mandamus Action

{¶ 21} Ms. Byk commenced this mandamus action on July 18, 2017 under case No. 17AP-511, seeking a writ directing the commission to vacate its November 3, 2016 order and issue a new order granting her request for scheduled-loss compensation under R.C. 4123.60 and 4123.57(B). Specifically, Ms. Byk challenges the commission's 2016 denial of her claim for accrued but unpaid scheduled-loss compensation under R.C. 4123.60 and 4123.57(B) for Mr. Byk's loss of use of his extremities. In denying Ms. Byk's 2016 claim, the commission did not conduct any evidentiary hearings or make any evidentiary findings. Instead, the November 3, 2016 order relied exclusively on the SHO's application of *Smith* in the April 3, 2014 order denying Mr. Byk's 2014 scheduled-loss claim to find that Ms. Byk "is collaterally estopped from receiving an award for [Mr. Byk's] loss of use of the extremities." (Stip. Evid. at 317-18.)

{¶ 22} Ultimately, then, Ms. Byk seeks in this mandamus action judicial review of the commission's application of *Smith* as a legal basis for denying compensation under R.C. 4123.57(B) for any loss other than loss of sight or hearing.

{¶ 23} Pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued the appended decision, including findings of fact and conclusions of law, recommending that we deny Ms. Byk's petition for a writ of mandamus. (Nov. 28, 2023 Mag.'s Decision at 16.)

{¶ 24} The commission, Ms. Byk, and Republic Steel each object to some of the magistrate's conclusions of law, as discussed in our analysis below. All objections were timely filed under Civ.R. 53(D)(3)(b). We are therefore required to independently review the objected to matters and evaluate whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). The parties do not object to the magistrate's findings of fact. Having reviewed the record and the magistrate's factual findings—and in the absence of any objection thereto—we find no error in the magistrate's determinations of the facts, except as otherwise specified below.

## II. LEGAL STANDARDS

### A. Mandamus Standard and Standard of Review

{¶ 25} An order of the commission that grants or denies scheduled-loss compensation sought under R.C. 4123.57(B) concerns the extent of a claimant's disability

and, as such, is not subject to appeal. *See, e.g., State ex rel. Kroger Co. v. Stover*, 31 Ohio St.3d 229 (1987), paragraph one of the syllabus; R.C. 4123.512(A). Thus, such order must be challenged in a mandamus action. *See id.*

{¶ 26} Ms. Byk is entitled to a writ of mandamus if she shows by clear and convincing evidence that she has a clear legal right to the requested relief, that the commission has a clear legal duty to provide that relief, and that she has no adequate remedy in the ordinary course of the law. *State ex rel. Zarbana Indus. v. Indus. Comm.*, 166 Ohio St.3d 216, 2021-Ohio-3669, ¶ 10. "When an order [of the commission] is adequately explained and based on some evidence, there is no abuse of discretion and a reviewing court must not disturb the order." *State ex rel. Aaron's, Inc. v. Ohio Bur. of Workers' Comp.*, 148 Ohio St.3d 34, 2016-Ohio-5011, ¶ 18.

{¶ 27} We are not, however, required to defer to an administrative agency's interpretation of a statute enacted by the General Assembly or application of case law issued by Ohio courts. *See TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, 172 Ohio St.3d 225, 2022-Ohio-4677, ¶ 3. And, the Supreme Court has broadly opined that, "[i]n the interpretation of Ohio's Workmen's Compensation statutes, R. C. 4123.95 dictates a liberal construction in favor of employees." *State ex rel. Gassmann v. Indus. Comm.*, 41 Ohio St.2d 64, 67 (1975).

### B. Scheduled Loss-of-Use Compensation

{¶ 28} R.C. 4123.57 governs partial disability compensation. R.C. 4123.57(B) sets forth a schedule for the payment of compensation at the statewide average weekly wage for the loss of enumerated body parts. A claimant would receive the following compensation for loss of use of the following body parts: 175 weeks for a hand, 225 weeks for an arm, 150 weeks for a foot, and 200 weeks for a leg. *See* R.C. 4123.57(B).

{¶ 29} The General Assembly included two provisions in R.C. 4123.57(B) protecting the rights of an injured worker's dependents to receive scheduled-loss benefits in the event of the injured worker's death. *State ex rel. Waste Mgt. of Ohio v. Indus. Comm.*, 171 Ohio St.3d 68, 2022-Ohio-4581, ¶ 45-46 (Kennedy, J., dissenting). Both provisions generally limit the right of an injured worker's dependent to receive scheduled-loss benefits to those cases in which an award was made "prior to the death" of the injured worker. *See id.* at ¶ 47, discussing R.C. 4123.57(B) (Kennedy, J., dissenting).

{¶ 30} Because nothing in R.C. 4123.57(B) provides for payment of scheduled-loss benefits to Ms. Byk—as Mr. Byk did not receive scheduled-loss benefits *before* his death—R.C. 4123.60, instead, governs Ms. Byk's claim as a surviving spouse for a scheduled-loss award under R.C. 4123.57(B) *after* Mr. Byk's death.

{¶ 31} Under R.C. 4123.60, a surviving spouse may apply for an award of compensation for which the decedent would have been lawfully entitled to apply at the time of death. *See, e.g.*, *State ex rel. Masterson v. Indus. Comm.*, 10th Dist. No. 18AP-83, 2019-Ohio-5217, ¶ 6, citing *State ex rel. Nyitray v. Indus. Comm.*, 2 Ohio St.3d 173, 174 (1983). Regarding a surviving spouse's entitlement to benefits, R.C. 4123.60 provides, in relevant part, as follows:

> In all cases where an award had been made on account of temporary, or permanent partial, or total disability, in which there remains an unpaid balance, representing payments accrued and due to the decedent at the time of his death, the administrator may, after satisfactory proof has been made warranting such action, award or pay any unpaid balance of such award to such of the dependents of the decedent, or for services rendered on account of the last illness or death of such decedent, as the administrator determines in accordance with the circumstances in each such case. If the decedent would have been *lawfully entitled* to have applied for an award at the time of his death the administrator may, after satisfactory proof to warrant an award and payment, award and pay an amount, not exceeding the compensation which the decedent might have received, but for his death, for the period prior to the date of his death, to such of the dependents of the decedent, or for services rendered on account of the last illness or death of such decedent, as the administrator determines in accordance with the circumstances in each such case, but such payments may be made only in cases in which application for compensation was made in the manner required by this chapter, during the lifetime of such injured or disabled person, or within one year after the death of such injured or disabled person.

(Emphasis added.)

## III. ANALYSIS

{¶ 32} In objecting to the magistrate's November 28, 2023 decision, the commission and Republic Steel both contest Ms. Byk's ability as a surviving spouse to seek an award

under R.C. 4123.57(B) for a loss of use not caused by injury to an extremity. Specifically, respondents contend the magistrate erred in finding the commission's 2014 denial of Mr. Byk's claim for loss of use did not have collateral estoppel consequences for Ms. Byk's 2016 claim brought pursuant to R.C. 4123.60.  (Jan. 18, 2024 Commission's Objs. at 2-15; Jan. 19, 2024 Republic Steel's Objs. at 13-19.)  Republic Steel also more broadly relies on the commission's April 3, 2014 denial of Mr. Byk's loss-of-use claim while he was alive to argue that, contrary to the magistrate's finding, Ms. Byk failed to satisfy the prerequisites of R.C. 4123.60.  (Republic Steel's Objs. at 9-13.)

{¶ 33} Ms. Byk objects to the magistrate's determination that, pursuant to *Smith*, 2014-Ohio-513, and our holding in *State ex rel. Walters v. Indus. Comm.*, 10th Dist. No. 20AP-560, 2022-Ohio-4587 ("*Walters I*"), scheduled-loss compensation cannot be awarded under R.C. 4123.57(B) for loss of use of extremities when the claimant's loss of that function is due to brain injury and not direct trauma to the affected body parts. (Dec. 12, 2023 Relator's Objs. at 5-10.)  Additionally, the commission and Ms. Byk both object to the magistrate's adjudication of the substantive merits of Ms. Byk's claim, as the commission did not address the merits in the first instance.  (Relator's Objs. at 1-4; Commission's Objs. at 15-18.)

**A. Collateral Estoppel Does Not Apply to Ms. Byk's Claim.**

{¶ 34} The magistrate determined the commission's April 3, 2014 denial of Mr. Byk's claim for loss of use under R.C. 4123.57(B) does not have collateral estoppel consequences for Ms. Byk's 2016 claim for accrued compensation under R.C. 4123.60 as his surviving spouse.  Respondents object to that determination.

{¶ 35} Collateral estoppel (issue preclusion) prevents parties or their privities from relitigating a point of law or fact in a subsequent suit that was actually and directly litigated in a prior action between the same parties and was passed upon by a court of competent jurisdiction. *Office of Consumers' Counsel v. Pub. Util. Comm.*, 16 Ohio St.3d 9, 10 (1985); *Thompson v. Wing*, 70 Ohio St.3d 176, 183 (1994).  It requires "an identity of parties and issues in the proceedings" and applies equally to administrative hearings.  *Beatrice Foods Co., Inc. v. Lindley*, 70 Ohio St.2d 29, 35 (1982).  *See also Set Prods., Inc. v. Bainbridge Twp. Bd. of Zoning Appeals*, 31 Ohio St.3d 260, 264 (1987).

{¶ 36} Respondents assert the commission's April 2014 order denying Mr. Byk's 2014 claim for loss of use under R.C. 4123.57(B) collaterally estops Ms. Byk from making a claim for accrued compensation under R.C. 4123.60 after her husband's death. Without addressing the elements of collateral estoppel, respondents merely assert that because commission proceedings concerning Mr. Byk's claim had come to a close, the SHO's April 2014 order finding Mr. Byk was not entitled to scheduled-loss benefits under R.C. 4123.57(B) became final and now has preclusive effect on Ms. Byk's 2016 claim for accrued benefits as his surviving spouse. In furtherance of that argument, respondents take great pains to distinguish a mandamus action from a direct appeal of a commission's order under R.C. 4123.512. (*See* Commission's Objs. at 5-15; Republic Steel's Objs. at 15-19.) But, ultimately, these efforts are of little consequence.

{¶ 37} Generally, litigants may seek judicial review of commission rulings in one of the following three ways: by direct appeal to the court of common pleas under R.C. 4123.512 in limited circumstances, by seeking a writ of mandamus in the Tenth District Court of Appeals or the Supreme Court, or by seeking a declaratory judgment under R.C. Chapter 2721. *Clendenin v. Girl Scouts of W. Ohio*, 150 Ohio St.3d 300, 2017-Ohio-2830, ¶ 9, citing *Felty v. AT & T Technologies, Inc.*, 65 Ohio St.3d 234, 237 (1992).

{¶ 38} The commission's April 3, 2014 order denying Mr. Byk's loss-of-use claim is not subject to direct appeal under R.C. 4123.512. *See Stover*, 31 Ohio St.3d at paragraph one of the syllabus; *Clendenin* at ¶ 12. As such, the writ of mandamus Mr. Byk sought in case No. 15AP-157 was the only viable remedy he could use to obtain meaningful judicial review of the commission's legal conclusion resulting in the denial of his loss-of-use claim.

{¶ 39} Although Mr. Byk timely initiated a mandamus action challenging the propriety of the commission's 2014 denial, he died before we conducted any judicial review of the commission's application of law in that order. This fact is significant because the commission relied on the reasoning in the April 2014 order to find, in 2016, that Ms. Byk was not entitled to an award for Mr. Byk's loss of use of his extremities under R.C. 4123.57(B). (*See* Stip. Evid. at 317-19.)

{¶ 40} Respondents' contention that an unresolved direct appeal permitted by R.C. 4123.512 should have different collateral estoppel consequences than an unresolved mandamus action concerning a commission's order would box this court into the position

of being unable to correct unreasonable or legally unsound commission decisions like the one in this case. And we note respondents do not support their collateral estoppel arguments with legal authority—binding or persuasive—suggesting any distinction on this issue between the two.

{¶ 41} To the contrary, it is precisely the absence of any adequate legal remedy (direct appeal or otherwise) that allows for a writ of mandamus to issue. *See, e.g.*, *State ex rel. Kerns v. Simmers*, 153 Ohio St.3d 103, 2018-Ohio-256, ¶ 5. " '[T]he writ of mandamus, at common law, was a prerogative writ, introduced to prevent discord from a failure of justice, and to be used on occasions where the law had established no specific remedy.' " *Id.* at ¶ 5, quoting *Shelby v. Hoffman*, 7 Ohio St. 450, 455 (1857).

{¶ 42} Article I, Section 16 of the Ohio Constitution provides that "[a]ll courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." Mr. Byk died before his mandamus action challenging the commission's 2014 denial of his request for scheduled-loss compensation was resolved by this court. Since the commission's interpretation and application of law was never subjected to meaningful judicial review by this court, Ms. Byk could not reasonably expect to be bound by any legal determination rendered by the commission in connection with her husband's claim. For these reasons, we find collateral estoppel does not preclude our judicial review of whether *Smith* impinges on Mr. Byk's entitlement to scheduled-loss compensation under R.C. 4123.57(B) for the loss of use of his extremities due to brain injury preceding his death.

{¶ 43} Even assuming the issue was fully litigated in Mr. Byk's 2015 mandamus action, respondents fail to account for another essential component of collateral estoppel: the parity of parties in the prior and subsequent actions. While collateral estoppel can apply to administrative proceedings under the appropriate factual circumstances, it is not applicable where the party upon whom collateral estoppel is asserted in a subsequent action lacks privity with the party in the first action.

{¶ 44} As the surviving spouse, Ms. Byk has exercised a separate right of action under R.C. 4123.60. Although Ms. Byk was the wife of Mr. Byk, she did not appear as a party in his 2014 claim for workers' compensation. Nor can it be said that she was closely aligned in interest to him. Even if she supports her 2016 claim with the same evidence Mr.

Byk originally submitted in support of his claim for scheduled-loss compensation, her claim is based on her own interests in Mr. Byk's workers' compensation benefits. *See, e.g., State ex rel. Sanders v. Indus. Comm.*, 10th Dist. No. 15AP-496, 2016-Ohio-7704, ¶ 9-11 (Brunner, J., concurring in judgment only). Of course, a compensable injury is necessary for surviving dependents to receive benefits under R.C. 4123.60 for accrued compensation. But the two sets of entitlements—one being the injured worker's claim during life and the other being the dependents' claim after the worker's death—are nonetheless separate and distinct. *See, e.g., id.* at ¶ 9 (Brunner, J., concurring in judgment only); *Indus. Comm. v. Davis*, 126 Ohio St. 593, 595-97 (1933). Indeed, Ms. Byk's claim under R.C. 4123.60 did not accrue until Mr. Byk's death.[2]

{¶ 45} Based upon a thorough review of the record and the applicable case law, it cannot be said that Ms. Byk was in privity with Mr. Byk. Accordingly, respondents' objections to the magistrate's determination that collateral estoppel has no application to Ms. Byk's claim are overruled.

{¶ 46} Ultimately, we agree with Republic Steel's contention that the real issue is not one of collateral estoppel but rather, whether Mr. Byk "would have been lawfully entitled to have applied for an award at the time of his death." (Emphasis omitted.) (*See* Republic Steel's Objs. at 10, quoting R.C. 4123.60.) Indeed, R.C. 4123.60 " 'permits the deceased claimant's dependents to receive awards made on account of "temporary, or permanent partial, or total disability," when there remains an unpaid balance of accrued payments due to the claimant at the time of the claimant's death,' " and also authorizes an award to the deceased claimant's dependents " 'up to the amount the decedent would have received if he had made application for an award of benefits to which he was lawfully entitled during his lifetime.' " *Masterson*, 2019-Ohio-5217 at ¶ 7, quoting Fulton, *Ohio Workers' Compensation Law*, Section 11.2, 618-19 (5th Ed.2018).[3]

---

[2] An example is instructive to this point. Under respondents' proposed application of collateral estoppel, the commission could summarily deny a surviving spouse's claim under R.C. 4123.60 for scheduled-loss compensation even when evidence not previously considered substantiated a loss-of-use award. For instance, an injured worker's condition could deteriorate over time such that medical evidence available after the commission denied a claim for scheduled-loss benefits brought during while the worker was alive would support an award even if sought by the surviving spouse after the injured worker's death.

[3] Under R.C. 4123.60, a surviving spouse may apply for an award of compensation for which the decedent would have been lawfully entitled to apply or was accrued but unpaid " 'only if an application was filed during

{¶ 47}  The DHO initially found on February 18, 2014 that an award of compensation for Mr. Byk's loss of use of his bilateral arms, hands, legs, and feet—despite resulting from brain injury and not direct trauma to the affected body parts—*was* substantiated by the medical evidence presented while Mr. Byk was still alive.  (*See* Stip. Evid. at 18-19.)  The SHO vacated that award *solely* on the authority of *Smith*, 2014-Ohio-513.  (Stip. Evid. at 38-40.)  The commission relied on the same legal grounds to deny Ms. Byk's claim in 2016. (*See* Stip. Evid. at 317-19.)

{¶ 48}  In interpreting R.C. 4123.60, both the commission and Republic Steel focus on the "lawfully entitled" phrase to argue that its April 3, 2014 denial of Mr. Byk's claim ipso facto means Ms. Byk cannot meet a threshold requirement of the statute: Mr. Byk's premortem entitlement to scheduled-loss compensation under R.C. 4123.57(B).  In doing so, respondents lose sight of the sole basis for the commission's 2014 denial of Mr. Byk's scheduled-loss claim: its application of *Smith*, a case involving loss of sight and hearing, to Mr. Byk's claim for scheduled-loss compensation for the loss of use of extremities due to brain injury.

{¶ 49}  Thus, whether Mr. Byk would have been lawfully entitled to scheduled-loss compensation under R.C. 4123.57(B) prior to his death hinges on our resolution of the ultimate issue presented in this case: whether the commission's application of *Smith* to a request for compensation for the loss of use of extremities was proper under the facts and circumstances of this case.  As explained below, we conclude it was not.

### B.  The Commission Erred in Applying *Smith* as Barring Mr. Byk's Claim for Loss of Use of his Extremities Due to Brain Injury.

{¶ 50}  This case centers entirely on our resolution of a purely legal question: whether the Supreme Court's holding in *Smith* can be applied as a legal basis for denying compensation under R.C. 4123.57(B) for the loss of use of limbs when that permanent loss of function is caused by brain injury and not direct trauma to the affected extremities.  We are not compelled to adopt the commission's reading or application of the law—unless, of

---

the deceased claimant's lifetime or within one year after his death.' " *Masterson* at ¶ 7, quoting Fulton, *Ohio Workers' Compensation Law*, Section 11.2, 619 (5th Ed.2018), and citing *State ex rel. Scott v. Ohio Bur. of Workers' Comp.*, 73 Ohio St.3d 202, 204 (1995) (applying one-year statute of limitations under R.C. 4123.60 to claim for scheduled-loss award under R.C. 4123.57). Respondents do not contest that Ms. Byk's application satisfied this requirement.

course, we find that its reading and application of the law were correct. *See TWISM Ents., L.L.C.*, 2022-Ohio-4677 at ¶ 63. For the reasons that follow, we conclude they were not.

{¶ 51} In *Smith*, the injured worker suffered anoxic brain damage as a result of surgical complications following a work-related injury, leaving him in a persistent vegetative state after the workplace accident. 2014-Ohio-513 at ¶ 2. In addition to seeking compensation on the allowed condition of anoxic brain injury (which was awarded), Smith also sought scheduled-loss compensation under R.C. 4123.57(B) for loss of sight and hearing caused by the loss of brain function. *Id.* at ¶ 5-6. The commission denied his request for scheduled-loss compensation because the medical evidence did not show any direct injury to Smith's eyes or ears, and Smith's inability to respond to visual stimuli or auditory communications due to his vegetative state precluded definitive testing of his vision and hearing. *See id.* at ¶ 7-9.

{¶ 52} On review, the Supreme Court held that "R.C. 4123.57(B) does not * * * provide for compensation for a loss of brain-stem functioning that precludes the claimant from processing and understanding the visual and auditory stimuli that are received by functioning eyes and ears." *Id.* at ¶ 13. The court therefore upheld the commission's decision denying the additional requests for compensation because the evidence showed that Smith had suffered a loss of brain-stem functioning; it did not support a finding that Smith's eyes and ears no longer functioned. *Id.* at ¶ 18-19.

{¶ 53} The Supreme Court recently acknowledged in *Walters II*, however, that "the requests for additional compensation in [*Smith*] were based on the contention that Smith suffered from a lack of cerebral-cortical functioning, ***not a loss of brain-stem functioning***." (Emphasis added.) 2024-Ohio-552 at ¶ 19, citing *Smith* at ¶ 2, 11-16, 19. Nonetheless, the *Walters II* court explained that "[r]egardless of whether Smith suffered a loss of brain-stem function or cerebral-cortex function, our conclusion that the ***medical evidence*** did not support a finding that Smith's eyes and ears no longer functioned remains unchanged." (Emphasis added.) *Id.*

{¶ 54} Notably, the magistrate's decision in this case relies heavily on our decision in *Walters I*, 2022-Ohio-4587, since reviewed by the Supreme Court in *Walters II*. In *Walters II*, the court clarified the appropriate application of *Smith*, noting that "the key question in *Smith* was whether the medical evidence demonstrated that Smith's eyes and

ears no longer functioned." *Walters II* at ¶ 26, citing *Smith* at ¶ 16. The *Walters II* court further explained:

> In *Smith*, the medical evidence included a physician's opinion that Smith could not process visual stimuli because " 'no significant relay of the impulses past the brain stem to the visual cortex on either side exist[ed],' " (emphasis deleted) *id.*, and the physician " '[did] not believe' " Smith could hear " 'because of loss of efferent pathways from the mid brain and auditory nerve to the auditory cortex bilaterally in the posterior superior temporal lobes,' " (brackets sic and emphasis deleted) *id.* at ¶ 17. ***The fact that there was no evidence of an eye or ear injury was significant because Smith's brain injury precluded definitive visual and auditory testing.*** *See id.* at ¶ 18. We denied the writ in that case because there was no evidence to support a finding that Smith's eyes and ears no longer functioned; the *only* loss established by the medical evidence was a loss of brain function. *Id.* at ¶ 18-19. In other words, the medical evidence demonstrated Smith's lack of ability to *respond* to visual stimuli or auditory communications but not a lack of sight or hearing.

(Emphasis sic and added.) *Id.* at ¶ 26.

{¶ 55} Critically, the *Walters II* court explained that "[t]he crux of our holding in *Smith* is that in the absence of injury to the eyes and ears, evidence of a brain injury that precludes definitive visual and auditory testing is insufficient to support a finding that the eyes and ears no longer function and, therefore, will not support an award for loss of sight and hearing under R.C. 4123.57(B)." *Id.* at ¶ 27, citing *Smith* at ¶ 2. *See also State ex rel. Harris v. Indus. Comm.*, 10th Dist. No. 21AP-60, 2022-Ohio-3149, ¶ 2; *State ex rel. PolyOne Corp. v. Indus. Comm.*, 10th Dist. No. 12AP-313, 2014-Ohio-1376, ¶ 6, fn. 1 (limiting *Smith*'s application to cases involving scheduled-loss benefits for loss of sight and hearing, and noting the *Smith* court did not discuss (or overrule) its decision in *State ex rel. Moorehead v. Indus. Comm.*, 112 Ohio St.3d 27, 2006-Ohio-6364 holding R.C. 4123.57(B) does not require an injured worker to be cognizant of his loss of use).

{¶ 56} This case does not involve a claim for loss of hearing or loss of sight. Rather, it involves a loss-of-use claim for Mr. Byk's bilateral arms, hands, legs, and feet due to brain injury.

**{¶ 57}** In this context, the *Walters II* court observed that "*Smith*'s basic premise seemingly applies to any alleged loss under R.C. 4123.57(B)—namely, in the absence of an injury to the affected body part, evidence of a brain injury that precludes definitive testing of the alleged loss is insufficient to support a finding that the affected body part no longer functions." 2024-Ohio-552 at ¶ 31. However—and most significantly—"the standard for ***proving*** the requisite degree of loss of a body part differs from the specific statutory standards applicable to loss of sight and loss of hearing." (Emphasis sic and added.) *Id.*

**{¶ 58}** For loss of sight, "in no case shall an award of compensation be made for less than twenty-five per cent loss of uncorrected vision." R.C. 4123.57(B). And, for loss of hearing, the statute precludes compensation "for less than permanent and total loss of hearing." *Id. See also Walters II* at ¶ 32, citing *State ex rel. Hammond v. Indus. Comm.*, 64 Ohio St.2d 237, 241 (1980) ("Regarding an injury related to hearing, as with sight, the General Assembly has specified in [R.C. 4123.57(B)] a threshold injury level, below which no compensation will be allowed" [footnote omitted]); *State ex rel. Dingess v. Indus. Comm.*, 82 Ohio St.3d 31, 34 (1998) ("R.C. 4123.57(B) expressly limits compensation to those suffering a permanent and total hearing loss").

**{¶ 59}** But, for loss of a limb under R.C. 4123.57(B), the Supreme Court has held that the "loss" of a body part includes amputation, severance, and "loss of use" that is both permanent and total, to the same effect and extent as if the limb had been physically removed. *Walters II* at ¶ 33, citing *State ex rel. Walker v. Indus. Comm.*, 58 Ohio St.2d 402 (1979). Thus, to obtain scheduled-loss compensation for loss of use of an extremity, "[a] claimant must demonstrate with medical evidence a total loss of use of the body part at issue 'for all practical intents and purposes.' " *Id.*, quoting *State ex rel. Alcoa Bldg. Prods. v. Indus. Comm.*, 102 Ohio St.3d 341, 2004-Ohio-3166, ¶ 12. *See also Moorehead*, 2006-Ohio-6364 at ¶ 20-22; *Gassmann*, 41 Ohio St.2d at 67.

**{¶ 60}** In *Alcoa Bldg. Prods.*, compensation was awarded under R.C. 4123.57(B) for the claimant's loss of the left arm based on evidence that the claimant was unable to use that arm with a prosthesis where claimant suffered an industrial injury to his left hand and arm that resulted in amputation of his left arm just above the elbow. 2004-Ohio-3166 at ¶ 1-4, 16-17. In *Moorehead*, scheduled-loss benefits were found to be payable under R.C. 4123.57(B) where the medical evidence established that before the claimant died from his

industrial injury, he suffered "the physical loss of use of his limbs" due to quadriplegia resulting from a spinal injury caused by his workplace fall. 2006-Ohio-6364 at ¶ 20-22.

**{¶ 61}** In reviewing our holding in *Walters I*, the Supreme Court noted that "[t]his case appears to be the first instance in which the Tenth District has denied compensation under R.C. 4123.57(B) for any loss other than loss of sight or hearing by applying our holding in *Smith*." *Walters II* at ¶ 34. The *Walters II* court also noted that "in at least one instance the commission has expressly declined to apply *Smith* to a request for compensation for the loss of use of arms and legs." *Id.*, citing *State ex rel. Heilman v. Indus. Comm.*, 10th Dist. No. 21AP-353, 2023-Ohio-3073, ¶ 52.

**{¶ 62}** But, ultimately, the *Walters II* court declined to resolve the extent to which *Smith* applies to a claim for compensation under R.C. 4123.57(B) for loss of use of the limbs. *Id.* Apart from the holding of *Smith*, the *Walters II* court found there was "some evidence in this case to support the SHO's finding that an award for compensation for decedent's loss of use of his arms and legs was not substantiated, and the cases on which Walters relies to support her loss-of-limbs claim are distinguishable from this case." *See Walters II* at ¶ 34-35.

**{¶ 63}** We note that, in *Walters I* and *II*, the injured worker sustained blunt trauma to his chest, which caused traumatic asphyxiation, which, in turn, caused traumatic cardiac arrest, ultimately resulting in a severe anoxic brain injury. *Walters II* at ¶ 2. Walters never regained consciousness and died the day after the industrial injury. *Id.* A key issue in that case, then, was whether Walters died prior to the loss of use of his upper and lower extremities. *See id.* at ¶ 8. And, critically, medical evidence did not indicate whether Walters's loss of function would have been permanent if he would have recovered from his anoxic brain injury. *See id.* at ¶ 38. *See, e.g., State ex rel. Koepf v. Indus. Comm.*, 10th Dist. No. 18AP-753, 2019-Ohio-3789, ¶ 11 (we have "repeatedly looked to whether the evidence supports that, but for the decedent's death, there was a loss of use that would have been permanent"), citing *State ex rel. Sagraves v. Indus. Comm.*, 10th Dist. No. 10AP-1030, 2012-Ohio-1010, ¶ 9, and *State ex rel. Carter v. Indus. Comm.*, 10th Dist. No. 09AP-30, 2009-Ohio-5547, ¶ 5.

**{¶ 64}** In stark contrast, here, Mr. Byk lived for nearly three years after his industrial injury. Dr. Erickson (Mr. Byk's independent medical expert) opined that Mr. Byk had

permanent loss of use of both upper and lower extremities, and Dr. Reichert (Republic Steel's independent medical expert) agreed, except as to the right upper extremity. (Stip. Evid. at 15, 35-36.) Based on the ***medical evidence*** presented at the 2014 hearing (*see, e.g.*, Stip. Evid. at 145-78, 181-252), the DHO found that Mr. Byk had "permanently lost the usage of the bilateral upper and lower extremities due to a persistent vegetative state, which itself is due to the allowed conditions in this claim," and thus granted Mr. Byk's scheduled-loss claim in February 2014. (Stip. Evid. at 19.)

{¶ 65} Critically, we note the *Smith* decision turned not on the ***mechanism*** of the loss of use (brain injury versus direct trauma) but, rather, the absence of any ***medical evidence*** to prove the claimant's entitlement to scheduled-loss benefits under R.C. 4123.57(B). For loss of sight and hearing claims, as alleged in *Smith*, R.C. 4123.57(B) precludes an award of compensation "for less than twenty-five per cent loss of uncorrected vision" and "for less than permanent and total loss of hearing." In contrast, the statute—as interpreted by the Supreme Court—authorizes compensation for the permanent loss of use of a hand, arm, leg, and foot without qualification. *See* R.C. 4123.57(B); *Moorehead*, 2006-Ohio-6364 at ¶ 13 (summarizing precedent holding that " 'loss' as used in R.C. 4123.57(B) is equivalent to 'loss of use' " because loss of function of an extremity has, for all practical purposes, the same effect as the actual physical removal of a limb)..

{¶ 66} This point is salient when comparing the medical evidence necessary to prove the scheduled-loss claim in *Smith* with Mr. Byk's claim in this case. In *Smith*, the commission denied Smith's request for additional compensation "based on the lack of any objective testing showing vision or hearing loss." 2014-Ohio-513 at ¶ 8. Indeed, because of Smith's persistent vegetative state, the court observed that "no test [could] be performed to determine whether he has suffered an actual loss of sight in one or both eyes or an actual loss of hearing in one of both ears." *Id.* at ¶ 2, 18. However, contrary to the position of respondents, the *Smith* court did not categorically hold that scheduled-loss compensation under R.C. 4123.57(B) is prohibited for the loss of use of a body part if that loss of function is due to brain injury and not direct trauma thereto.

{¶ 67} Indeed, unlike for loss of sight and loss of hearing, medical evidence ***can*** prove permanent loss of use of arms, hands, legs, and feet even when that loss of function is caused by brain damage from an industrial injury. This is because these types of losses

can be evaluated and proven through objective and reliable physical testing, physical examination, and observation even when the injured worker is unable to process sights and sounds because of brain damage. *Compare Smith* at ¶ 6.

{¶ 68} To be sure, the DHO found as much when he initially determined that Mr. Byk was entitled to scheduled-loss compensation in February 2014 for his permanent loss of use of his bilateral upper and lower extremities "due to a persistent vegetative state." (*See* Stip. Evid. At 18-19.) The DHO's 2014 finding was based on medical evidence describing observations of Mr. Byk's non-purposeful movements (using right hand to scratch or touch face, hold a stuffed animal, and pull on support tubing), purposeful movements (attempting a "thumbs up" in right hand), responses to painful stimuli (withdrawing in right upper and left lower extremities; equivocal withdrawal in left upper extremity; no withdrawal in right lower extremity), and musculature atrophy (noted past the knees in both lower extremities). (*See* Stip. Evid. at 3-9, 11-16, 18-37, 82-136, 138-40, 181-252.) And because Mr. Byk remained in inpatient medical care for the remainder of his life, his progressive loss of function over time was extensively documented in the medical records from the date of the industrial injury (August 20, 2012) up until around the time of his death (May 3, 2015).

{¶ 69} Based on the foregoing, we hold that the commission erred in applying the holding of *Smith* as a bright-line legal bar that entirely foreclosed Mr. Byk's entitlement to scheduled-loss compensation under R.C. 4123.57(B) for loss of use of "an arm," "a hand," "a foot," or "a leg." On review, we find that—contrary to the commission's determination— nothing in R.C. 4123.57(B) requires proof of "direct trauma" to an injured worker's extremity in order to substantiate a claim for the loss of use of an extremity. And we decline to extend the holding of *Smith* to exclude compensation for any permanent loss of use caused by brain injury from an industrial accident, irrespective of whether reliable and objective physical testing or examination can show the existence of a loss contemplated by R.C. 4123.57(B). *See generally Heilman*, 2023-Ohio-3073; *Walker*, 58 Ohio St.2d 402.

{¶ 70} For these reasons, we find the commission's reliance on the flawed legal reasoning underlying the SHO's 2014 order as the sole basis for denying Ms. Byk's 2016 application was contrary to law. Finding the commission thus abused its discretion in issuing the 2016 order denying Ms. Byk's claim, we sustain Ms. Byk's second objection to

the magistrate's decision, overrule the commission's first objection, and overrule both of Republic Steel's objections.

### C. The Magistrate Erred in Evaluating Ms. Byk's Entitlement to Scheduled-Loss Benefits in the First Instance.

{¶ 71} We agree, however, that after finding Ms. Byk was entitled to apply for scheduled-loss compensation under R.C. 4123.60 and 4123.57(B), the magistrate erred by proceeding to the merits of Ms. Byk's application. The commission never adjudicated the merits of her application. Instead, as described above, it relied on its 2014 application of *Smith* when it denied Mr. Byk's loss-of-use claim as the sole basis for denying Ms. Byk's claim in 2016. Yet, the magistrate considered the evidence in the stipulated record and rendered his own decision on whether Ms. Byk should receive the award.

{¶ 72} It was error for the magistrate to evaluate the weight and credibility of the evidence for the first time, and not to instead return the matter to the commission for the initial adjudication of the substantive merits of Ms. Byk's claim. *See, e.g.*, *State ex rel. Pass v. C.S.T.*, 74 Ohio St.3d 373 (1996); *State ex rel. LTV Steel Co. v. Indus. Comm.*, 88 Ohio St.3d 284, 287 (2000); *State ex rel. Williams v. Indus. Comm.*, 10th Dist. No. 98AP-573, 1999 Ohio App. LEXIS 1149 (Mar. 25, 1999).

{¶ 73} Accordingly, we sustain Ms. Byk's first objection and the commission's second objection to the magistrate's decision, and return the matter to the commission for its review of the evidence and determination of whether Ms. Byk, as Mr. Byk's surviving spouse, is entitled to an award of accrued compensation for Mr. Byk's loss of use of his bilateral arms, hands, legs, and feet due to a brain injury sustained in an industrial accident prior to his death under R.C. 4123.57(B) and 4123.60.

## IV. DISPOSITION

{¶ 74} After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of the parties' objections and arguments, we sustain Ms. Byk's two objections, overrule Republic Steel's two objections, overrule the commission's first objection, and sustain the commission's second objection.

{¶ 75} Accordingly, we modify the magistrate's findings of fact and conclusions of law for the reasons discussed above. We grant a limited writ of mandamus directing the

commission to vacate its November 3, 2016 order and issue a new order adjudicating Ms. Byk's application consistent with law and this decision.

*Objections sustained in part, and overruled in part;*
*limited writ of mandamus granted.*

MENTEL P.J. and BEATTY BLUNT, J., concur.

————————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Pin Cha Byk, | : | |
| Relator, | : | |
| v. | : | No.  17AP-511 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on November 28, 2023

*Dean R. Wagner* and *Vincent J. DeLorenzo*, for relator.

*Dave Yost*, Attorney General, and *John R. Smart*, for respondent Industrial Commission of Ohio.

*Morrow & Meyer*, *LLC*, and *Tod T. Morrow*, for respondent Republic Steel.

IN MANDAMUS

{¶ 76} Relator Pin Cha Byk seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying loss of use compensation to Pin Cha Byk, as the surviving spouse of Bohdanus Byk.

{¶ 77} By way of background, Bohdanus Byk sought and was denied loss of use compensation pursuant to R.C. 4123.57(B). A mandamus action in Bohdanus Byk's name seeking review of the commission's denial was dismissed by this court following his death. While Bohdanus Byk's mandamus action was still pending, Pin Cha Byk filed with the commission an application for compensation pursuant to R.C. 4123.60 asserting entitlement to a loss of use award under R.C. 4123.57(B) based on Bohdanus Byk's injuries.

Following the commission's denial of that application, Pin Cha Byk filed the instant mandamus action. As this matter involves interrelated and often chronologically overlapping proceedings before the commission and this court, the following findings of fact are grouped chronologically by action rather than strictly chronologically.

## I. Findings of Fact

{¶ 78} 1. Bohdanus Byk suffered severe injuries on August 20, 2012 in the course and arising out of his employment with respondent Republic Steel. While cleaning a ladle car, Bohdanus Byk slipped, fell on the cement, and hit his head. After being transported to hospital, he underwent a right frontal decompressive craniotomy with drainage and evacuation of the right temporal acute subdural hematoma as well as superior frontal intraparenchymal hematomas. Following surgery, Bohdanus Byk remained in a persistent vegetative state until his death on May 3, 2015.

{¶ 79} 2. Bohdanus Byk's workers' compensation claim was recognized for the following conditions: subarachnoid hemorrhage; subdural hemorrhage; intracerebral hemorrhage; fracture left ribs 3-6; subdural hematoma; intraparenchymal hematoma; subarachnoid hemorrhage with significant traumatic brain injury status post-decompressive craniotomy with resultant persistent vegetative state; neuralgic bowel; bladder dysfunction; chronic respiratory failure.

## A. Bohdanus Byk's Loss of Use Claim Pursuant to R.C. 4123.57(B)

{¶ 80} 3. In October 2013 and January 2014, Bohdanus Byk filed C-86 motions seeking compensation pursuant to R.C. 4123.57(B) for loss of use of his right and left upper extremities and right and left lower extremities. Byk's January 2014 motion was supported in part by the reports of Dean W. Erickson, M.D., which were completed following an examination of Bohdanus Byk on December 19, 2013.[4]

---

[4] In the first report, Dr. Erickson addressed whether Bohdanus Byk's workers' compensation claim should be amended to include additional allowed conditions. (Stip. at 3-9.) In the second report, Dr. Erickson addressed whether Bohdanus Byk had for all practical intent and purposes permanently lost the use of his bilateral upper extremities, including both arms and hands, and his bilateral lower extremities, including both legs and feet. (Stip. at 320-26.) Aside from the opinions in the conclusion, the body of Dr. Erickson's reports appear largely identical. Having reviewed both reports and considering that the additional allowances discussed in the first report are not at issue in this matter, references in this decision to Dr. Erickson's report following his December 19, 2013 examination of Bohdanus Byk are to the second identified report that addressed loss of use.

{¶ 81} 4. Dr. Erickson initially noted that Bohdanus Byk was in a persistent vegetative state and was unresponsive, so Dr. Erickson obtained the history of the matter from medical records and conversations with Pin Cha Byk and Tim Thurman, one of Bohdanus Byk's coworkers at Republic Steel. Prior to his work-related injury, Bohdanus Byk was reportedly in good health without prior neurological injuries or conditions. After his injury and hospitalization, Bohdanus Byk's prognosis was "extremely poor and it was concluded that he would never recover neurologically." (Stip. at 322.) At the time of Dr. Erickson's examination, Bohdanus Byk was under the following protocols for his care: "PICC line for IV, PEG feeding tube, Constant demand ventilator with oxygen for respiratory failure, Indwelling urinary catheter, Utilization of diapers for loss of bowel function, Specialized mattress and extremity padding to prevent ulcers." (Stip. at 322.)[5] Regarding his condition at the time of examination, Dr. Erickson stated:

> Currently, Mr. Byk is in a persistent vegetative state. There is no meaningful response or spontaneous attempts at communication. Mr. Byk essentially lies quietly, with only occasional, non-purposeful motion of right upper extremity such as reaching up to pick at his face or eyebrow. He reportedly has very minimal non-purposeful movements of both feet and has had no movement of his left upper extremity. The only response reported in the record, or by Mrs. Byk or Mr. Thurman, is that Mrs. Byk is at times able to get Mr. Byk to open up his eyes with her voice commands. Occasionally, this will also happen if his hand is held. They state that he does not respond to voice commands of others. Finally, it is noted that Mr. Byk does have a bit of facial sensation if there is a light touch to the open craniotomy area of his skull.
>
> * * *
>
> In terms of function, Mr. Byk has none. Apparently, there were several times when the family and staff have gotten him into a sitting position in a chair; however, he has not been able to do that for months.

(Stip. at 323.) "[B]ased on the severe neurologic sequelae of [Bohdanus Byk's] traumatic brain injury with resultant loss of purposeful motions with joint contractures," Dr. Erickson

---

[5] Multiple supplemental stipulations to the evidence were filed following the original stipulation. As these supplemental stipulations were numbered consecutively to the original stipulation, documents in all stipulations are referred to by page number only without further differentiation.

concluded that Bohdanus Byk "for all practical intent and purposes has permanently lost the use" of his right and left upper extremities, including his arms and hands, and right and left lower extremities, including his feet and legs. (Stip. at 326.)

{¶ 82} 5. Bohdanus Byk was next examined by Richard J. Reichert, M.D., on February 6, 2014. In a February 10, 2014 report, Dr. Reichert stated that "[i]nterview with the caregiver * * * and Ms. Byk identified that the individual will routinely hold a stuffed animal in his right hand and will use the right hand to scratch or touch his face area" and that "[p]roviding him a stuffed animal to grasp reportedly keeps him from pulling on his various support tubing." (Stip. at 12.) Dr. Reichert stated the following with regard to his examination of Bohdanus Byk:

> My examination of Mr. Byk revealed a gentleman who was bedridden. He had heel pads/cushions to avoid development of pressure sores. * * * He did withdraw from painful stimuli in the right upper extremity and left lower extremity. He had an equivocal withdrawal in the left upper extremity and no evidence of withdrawal in the right lower extremity. There was atrophy noted in the musculature past the knees in both lower extremities.
>
> * * *
>
> With the right hand, he grabbed and held onto a stuffed animal. He also gave what appeared to be a response to a verbal request to squeeze my fingers.

(Stip. at 12.)

{¶ 83} At the conclusion of his report, Dr. Reichert provided opinions in response to a series of questions. Asked whether there is any injury or damage to Bohdanus Byk's spinal cord which rendered him a quadriplegic or paraplegic, Dr. Reichert responded, "I found no medical evidence to substantiate a diagnosis of spinal cord injury in Mr. Byk and, as such, there is no evidence of quadriplegia or paraplegia." (Stip. at 15.) Asked whether Bohdanus Byk had purposeful movement of his extremities, Dr. Reichert stated:

> Mr. Byk had purposeful movement of the right upper extremity on the date of my examination. There is notation made as recently as 09/03/2013 that the individual has bilateral lower extremity purposeful movements. It is noted shortly after this that the individual was admitted for sepsis and found to have an increase in encephalopathy and CT evidence of new left hemisphere cerebral bleed in the left basal ganglia and in the left subinsular cortex. It is noted that his

> medical records identify evidence of the individual pulling out his catheter in April of 2013. Lower extremity spontaneous movements were noted on 01/03/2013 as well. A nursing note of 04/29/2013 identified purposeful movement of the left arm and response to squeezing request with the right hand on that same date.

(Stip. at 15.) In response to being asked whether Bohdanus Byk would have function of his extremities if not for the brain injury, Dr. Reichert stated: "In my review of the medical records, I did not find any evidence that this individual had extremity trauma. There is no evidence of extremity trauma to my examination as well. * * * If not for the brain injury, Mr. Byk would be expected to have function of his extremities." (Stip. at 15.) Finally, asked whether it was accurate that Bohdanus Byk had function of his extremities but does not engage that function due to his brain injury and persistent vegetative state, Dr. Reichert responded: "Yes. Mr. Byk's brain injury and subsequent neurological sequelae from that injury are responsible for the persistent vegetative state and specifically the function of his extremities, both upper and lower. His neurologic/brain injury prevents Mr. Byk from engaging his extremities to attain normal function." (Stip. at 15.)

{¶ 84} 6. In an order dated February 20, 2014, a commission district hearing officer ("DHO") awarded compensation pursuant to R.C. 4123.57(B) for Bohdanus Byk's loss of use of his right and left upper extremities, including arms and hands, and loss of use of his right and left lower extremities, including legs and feet. Republic Steel appealed the DHO's order.

{¶ 85} 7. In an addendum dated March 12, 2014, Dr. Erickson addressed Dr. Reichert's report. With regard to Dr. Reichert's opinion that there was no evidence of injury or damage to Bohdanus Byk's spinal cord that would render him quadriplegic or paraplegic, Dr. Erickson "agree[d] with Dr. Reichert's assessment in that I also found no evidence of a spinal cord injury." (Stip. at 36.) Dr. Erickson further stated:

> Dr. Reichert did conclude based on his evaluation and his review of the medical record that Mr. Byk did have purposeful movements of at least of [sic] his right upper extremity on the date of his examination and reference to bilateral lower extremity purposeful movements in September 2013. I would respectfully disagree with Dr. Reichert's assessment of what constitutes purposeful movement. Purposeful movement by definition requires higher cortical function which unfortunately Mr. Byk does not possess. In the absence of

higher cortical function there cannot be a purposeful movement. There is no evidence that Mr. Byk's occasional movement of his right upper extremity to touch his face is in anyway [sic] considered purposeful.

Dr. Reichert then concludes that if not for the brain injury, Mr. Byk would be expected to have function of his extremities and that Mr. Byk's neurologic/brain injury prevented Mr. Byk from engaging his extremities to attain normal function. I would agree with Dr. Reichert's assessment that indeed Mr. Byk's lack of purposeful movement or for that matter any use of his extremities is due to the brain injury.

(Stip. at 36.)

{¶ 86} 8. On April 8, 2014, a commission staff hearing officer ("SHO") vacated the DHO's order and denied Bohdanus Byk's loss of use claim. The SHO found that Bohdanus Byk "failed to establish he is entitled to the payment for the scheduled loss of use of all four extremities," and stated that the "order is based on [R.C.] 4123.57(B) and the decision set forth in *Smith v. Industrial Commission of Ohio*." (Stip. at 39.) Applying *State ex rel. Smith v. Indus. Comm.*, 138 Ohio St.3d 312, 2014-Ohio-513, the SHO made the following findings:

[T]he Injured Worker also suffers from the loss of brain-stem functioning. The claim is also recognized for persistent vegetative state. Because of the lack of higher cortical functioning, the Injured Worker's extremities have no purposeful movement. Counsel for the Injured Worker contends the Injured Worker is entitled to the scheduled loss of use of the four extremities as a consequence of the loss of brain-stem functioning. Based on the reasoning set forth in the <u>Smith</u> case, the Staff Hearing Officer finds that [R.C.] 4123.57(B) does not authorize compensation for the loss of brain stem functioning.

(Stip. at 39.) Thus, the SHO denied Bohdanus Byk's request for compensation.

{¶ 87} 9. Bohdanus Byk's appeal from the SHO's order was refused by the commission on April 29, 2014.

{¶ 88} 10. Bohdanus Byk filed a mandamus action in this court on March 6, 2015 seeking review of the SHO order. Bohdanus Byk voluntarily dismissed the action on May 8, 2015. *State ex rel. Byk v. Indus. Comm.*, 10th Dist. No. 15AP-157 (May 13, 2015) (Journal Entry of Dismissal).

{¶ 89} 11. Following Bohdanus Byk's death on May 3, 2015, a mandamus action in the name of Bohdanus Byk was filed in this court on October 29, 2015 in case No. 15AP-

992. Upon motion, Pin Cha Byk, in her capacity as executrix of the estate of Bohdanus Byk, was substituted as the relator in the action by entry on November 13, 2015.

{¶ 90} 12. On January 20, 2022, this court dismissed the mandamus action pursuant to Civ.R. 12(B)(1). *State ex rel. Byk v. Indus. Comm.*, 10th Dist. No. 15AP-992, 2022-Ohio-136, ¶ 13 ("*Byk I*").

**B. Pin Cha Byk's Claim for Benefits Pursuant to R.C. 4123.60 & R.C. 4123.57(B)**

{¶ 91} 13. On April 21, 2016, Pin Cha Byk filed with the commission a C-86 motion for benefits pursuant to R.C. 4123.60 as the surviving spouse and dependent of Bohdanus Byk. Pin Cha Byk sought an award of compensation pursuant to R.C. 4123.57(B) for Bohdanus Byk's loss of use of his right and left upper extremities, including arms and hands, and loss of use of his right and left lower extremities, including legs and feet. In support of her motion, Pin Cha Byk relied on the two reports of Dr. Erickson following his December 19, 2013 exam of Bohdanus Byk in addition to the medical evidence in the file.

{¶ 92} 14. A commission DHO denied Pin Cha Byk's April 21, 2016 motion by order mailed July 6, 2016. Pin Cha Byk appealed the denial.

{¶ 93} 15. On August 16, 2016, a commission SHO affirmed the DHO's July 6, 2016 order. Noting that Bohdanus Byk's motion for loss of use of bilateral upper and lower extremities pursuant to R.C. 4123.57(B) was denied by order on April 8, 2014, the SHO stated that "[t]herefore, the request by the Widow-Claimant for accrued compensation for scheduled loss of the right and left upper and right and left lower extremities is denied." (Stip. at 263.) Pin Cha Byk then appealed the SHO's order.

{¶ 94} 16. On December 10, 2016, the commission issued an order affirming the SHO's August 16, 2016 order. The commission made the following findings:

> The Surviving Spouse's request is based on the prior request by the Decedent Injured Worker for an award under R.C. 4123.57 for the loss of use of all the extremities, filed 01/21/2014.
>
> The initial request for an award based on the loss of use of the extremities was filed by the Decedent Injured Worker on 01/21/2014, and adjudicated and denied by the Staff Hearing Officer order, issued 04/08/2014. Because the request was denied by a final decision at the administrative level, the Decedent Injured Worker's entitlement to the loss-of-use award has already been determined and denied, and based on

this action, there is no award for the loss of use of the extremities he would be entitled to and no accrued compensation for a loss of use of the extremities. Therefore, there is no entitlement award or accrued compensation payable pursuant to R.C. 4123.61 to the Surviving Spouse. The Surviving Spouse is collaterally estopped from receiving an award for the Decedent's loss of use of the extremities under R.C. 4123.57 based on the denial of the Decedent's request for this award by the Staff Hearing Officer order, issued 04/08/2014.

(Stip. at 317-18.)

{¶ 95} 17. Pin Cha Byk filed with this court her complaint that is the subject of the present mandamus action on July 18, 2017.

{¶ 96} 18. Republic Steel filed a motion to dismiss on August 1, 2017. The commission filed a motion to dismiss on August 23, 2017. On May 13, 2022, the magistrate previously assigned to this matter denied the motions to dismiss. The magistrate concluded that Pin Cha Byk "may adjudicate in this action the question of whether she is entitled to a writ of mandamus because the commission had a clear legal duty to award R.C. 4123.57(B) benefits based on the nature of [Bohdanus Byk's] injury." (May 13, 2022 Mag.'s Order at 3.)

{¶ 97} 19. With answers having been filed, the matter proceeded to briefing and argument.

## II. Discussion and Conclusions of Law

{¶ 98} Pin Cha Byk seeks review of the commission's order denying her application as a dependent under R.C. 4123.60 for loss of use compensation under R.C. 4123.57(B) based on Bohdanus Byk's injuries.

## A. Compensation for Dependents Following the Death of an Injured Worker

{¶ 99} An injured worker's cause of action under the Workers' Compensation Act accrues at the time the worker is injured in the course of employment, whereas the cause of action of a worker's dependent accrues at the time of the worker's death. *Indus. Comm. v. Kamrath*, 118 Ohio St. 1 (1928), paragraphs three and four of the syllabus. "Such causes of action are separate and independent, neither being dependent upon nor affected by the determination of the other." *Indus. Comm. v. Davis*, 126 Ohio St. 593 (1933), paragraph two of the syllabus.

{¶ 100} "When a claimant dies, an action pending at the time of death is abated by the claimant's death." *State ex rel. Coleman v. Indus. Comm.*, 136 Ohio St.3d 77, 2013-Ohio-2406, ¶ 13, fn. 2. Abatement of workers' compensation actions is addressed by Ohio Adm.Code 4123-5-21, which provides:

> (A) When a claimant dies, action on any application filed by the claimant, and pending before the bureau of workers' compensation or the industrial commission at the time of his death, is abated by claimant's death.
>
> (B) Abatement of action, as described in paragraph (A) of this rule, does not apply to payment for medical and hospital treatment, for medicine, nursing, and other health care services rendered as a result of the injury or occupational disease for which the claim was allowed during the deceased claimant's lifetime, provided that the respective bills were filed within the time as required by law and by the rules of the industrial commission and the bureau.

*See also* Ohio Adm.Code 4123-3-10(A)(6)(b) ("When a claimant dies prior to endorsing a compensation check or accessing an electronic benefit payment, no one has the right to endorse and cash such check or access the electronic benefit funds. * * * Upon receipt of information of claimant's death, payment of compensation shall be terminated and proper entry made in the records of the bureau.").

{¶ 101} "R.C. 4123.60 addresses eligibility of dependents to receive compensation for which a deceased worker was entitled to but did not receive prior to death." *State ex rel. Masterson v. Indus. Comm.*, 10th Dist. No. 18AP-83, 2019-Ohio-5217, ¶ 6. In pertinent part, the statute provides:

> If the decedent would have been lawfully entitled to have applied for an award at the time of his death the administrator may, after satisfactory proof to warrant an award and payment, award and pay an amount, not exceeding the compensation which the decedent might have received, but for his death, for the period prior to the date of his death, to such of the dependents of the decedent, or for services rendered on account of the last illness or death of such decedent, as the administrator determines in accordance with the circumstances in each such case, but such payments may be made only in cases in which application for compensation was made in the manner required by this chapter, during the lifetime of such injured or disabled person, or within one year after the death of such injured or disabled person.

R.C. 4123.60. Thus, R.C. 4123.60 allows a deceased claimant's dependents to receive an award up to the amount the claimant would have received if the claimant would have lawfully been entitled to apply for such award while alive. R.C. 4123.60 permits dependents to receive such an award only where the application was filed either during the deceased claimant's lifetime or within one year after the deceased claimant's death. *See State ex rel. Scott v. Bur. of Workers' Comp.*, 73 Ohio St.3d 202, 204 (1995) (finding that surviving spouse's application for scheduled loss compensation under R.C. 4123.57 was barred by the one-year statute of limitations in R.C. 4123.60).

**B. Loss of Use Claims Under R.C. 4123.57(B)**

{¶ 102} "R.C. 4123.57(B) provides for scheduled-loss compensation that is paid to an injured worker for the loss of a body part as listed in the schedule." *Coleman,* 2013-Ohio-2406, at ¶ 16. In pertinent part, the schedule in R.C. 4123.57(B) provides:

> For the loss of a hand, one hundred seventy-five weeks.
>
> For the loss of an arm, two hundred twenty-five weeks.
>
> * * *
>
> For the loss of a foot, one hundred fifty weeks.
>
> For the loss of a leg, two hundred weeks.

R.C. 4123.57(B).[6] Thus, the statute "specifies, to some degree, how loss is measured, based on the anatomy of the affected member." *State ex rel. Riter v. Indus. Comm.*, 91 Ohio St.3d 89, 90 (2001). "The claimant bears the burden of proving entitlement to compensation." *State ex rel. Koepf v. Indus. Comm.*, 10th Dist. No. 18AP-753, 2019-Ohio-3789, ¶ 6, citing *State ex rel. Yellow Freight Sys., Inc. v. Indus. Comm.*, 81 Ohio St.3d 56, 57 (1998).

{¶ 103} Generally, and as relevant to hands, arms, feet, and legs, R.C. 4123.57(B) does not define loss. When the loss of use statute was originally construed, amputation was considered the only compensable loss. *See State ex rel. Bohan v. Indus. Comm.*, 146 Ohio St. 618 (1946), paragraph two of the syllabus (holding that the "word 'loss' as used in [the scheduled loss statute] and therein applied to certain members of the human body

---

[6] R.C. 4123.57 has been amended multiple times since Pin Cha Byk filed her motion for benefits with the commission on April 21, 2016. However, the changes wrought by those amendments are not at issue in this matter.

means loss by severance and not the loss of use of such members"). This interpretation was overruled when the Supreme Court of Ohio held that "loss" as used in R.C. 4123.57 "includes 'loss of use' and not merely 'loss by severance' " so as "to alleviate the 'obviously unjust result, whereby a claimant's award is measured by the fortuity of the events contributing to his disability.' " *State ex rel. Walker v. Indus. Comm.*, 58 Ohio St.2d 402, 404 (1979), quoting *State ex rel. Benton v. Columbus & S. Ohio Elec. Co.*, 14 Ohio St.2d 130, 133 (1968) (stating further that "permanent impairment of a member without severance generally entitles the injured employee to an award and is regarded as being the same as loss by severance").

{¶ 104} In more recent years, the court recognized that a claimant may receive total loss of use compensation where the medical evidence establishes a "permanent loss of use of the injured bodily member for all practical intents and purposes." *State ex rel. Alcoa Bldg. Prods. v. Indus. Comm.*, 102 Ohio St.3d 341, 2004-Ohio-3166, ¶ 12. *See State ex rel. Varney v. Indus. Comm.*, 143 Ohio St.3d 181, 2014-Ohio-5510, ¶ 16 (stating that a claimant "may qualify for a total loss of use even when the body part retains some residual function"); *Koepf* at ¶ 7 (stating that a claimant must demonstrate the loss of use is permanent and that a causal relationship exists between the allowed occupational injury and the alleged loss of use); *State ex rel. Waste Mgt. of Ohio v. Indus. Comm.*, 171 Ohio St.3d 68, 2022-Ohio-4581, ¶ 19, quoting *State ex rel. Moorehead v. Indus. Comm.*, 112 Ohio St.3d 27, 2006-Ohio-6364, ¶ 14, 16 (stating that " 'R.C. 4123.57(B) does not specify a required length of time of survival after a loss-of-use injury before benefits pursuant to R.C. 4123.57(B) are payable" and noting that " 'there is no language in R.C. 4123.57(B) requiring that an injured worker be consciously aware of his paralysis in order to qualify for scheduled loss benefits' "). *See also State ex rel. Meissner v. Indus. Comm.*, 94 Ohio St.3d 203, 205 (2002) (stating that "when dealing with amputation, R.C. 4123.57(B) is far less opaque," but "[l]oss of use without amputation * * * can be more complicated").

{¶ 105}  Since *Walker* and *Alcoa*, the Supreme Court of Ohio considered the issue of "whether R.C. 4123.57(B) permits an award of compensation for the scheduled loss of vision or hearing when the inability to comprehend sights or sounds results from a lack of brain-stem function." *State ex rel. Smith v. Indus. Comm.*, 138 Ohio St.3d 312, 2014-Ohio-513, ¶ 12. In *Smith*, the court found in a four-to-three decision that the claimant's

loss of brain stem functioning, which resulted in an inability to comprehend sights or sounds, was "a loss that the General Assembly has not included in the schedule for compensation set forth in R.C. 4123.57." *Id.* at ¶ 19. As a result, the court found the commission "properly denied his claim seeking additional compensation for loss of vision and hearing" even though the medical evidence established the claimant "lack[ed] the ability to process visual and auditory stimuli" as a result of the industrial injury. *Id.* at ¶ 18.

{¶ 106} Following *Smith*, this court held that "where there is only a loss of brain function * * * and no injury to a body part listed in R.C. 4123.57(B), and no other injury to the body, the commission does not abuse its discretion in failing to award loss of use compensation under R.C. 4123.57." *State ex rel. Walters v. Indus. Comm.*, 10th Dist. No. 20AP-560, 2022-Ohio-4587, ¶ 22 (finding that the commission did not abuse its discretion in denying loss of use compensation to surviving spouse where the decedent injured worker suffered a traumatic cardiac arrest as a result of traumatic asphyxiation, sustaining a severe anoxic brain injury).

## C. Application

{¶ 107} Pin Cha Byk asserts the commission erred in denying her application for compensation pursuant to R.C. 4123.60 on the basis of collateral estoppel. The commission responds that this matter "has nothing to do with collateral estoppel" and does not attempt to defend its order denying Pin Cha Byk's application for compensation on this basis. (Comm. Brief at 12.) The commission's response is not borne out by the plain text of the commission's order denying Pin Cha Byk's appeal from the SHO's order. In that order, the commission states that "[t]he Surviving Spouse is collaterally estopped from receiving an award for the Decedent's loss of use of the extremities under R.C. 4123.57 based on the denial of the Decedent's request for this award by the Staff Hearing Officer order, issued [April 8, 2014]." (Stip. at 318.) Thus, a stated basis for the commission's denial of Pin Cha Byk's request for compensation was collateral estoppel. Nevertheless, unlike the commission, Republic Steel argues that the commission correctly denied Pin Cha Byk's application under the doctrine of collateral estoppel.

{¶ 108} Beyond collateral estoppel, both the commission and Republic Steel argue that the commission did not err in denying Pin Cha Byk's application for compensation

pursuant to R.C. 4123.60 because they argue that Bohdanus Byk would not have been lawfully entitled to have applied for an award at the time of his death. This court, in its decision in *Byk I*, has already provided an answer as to whether collateral estoppel bars Pin Cha Byk's application and whether R.C. 4123.60 permitted Pin Cha Byk to claim that Bohdanus Byk was lawfully entitled to the scheduled loss-of-use benefits.

{¶ 109}   In *Byk I*, this court first considered whether Bohdanus Byk's application for scheduled loss benefits pursuant to R.C. 4123.57(B) had abated on Bohdanus Byk's death. Based on the language of R.C. 4123.60, Pin Cha Byk argued an application for benefits only abates if the application was pending before the Bureau of Workers' Compensation or the commission at the time of the applicant's death. Because the commission had already denied Bohdanus Byk's application for scheduled loss benefits before his death, Pin Cha Byk argued that the application had not abated. This court rejected those arguments, noting that there exist "two circumstances under which a deceased worker's claim does not abate upon the worker's death: (1) where the commission has allowed the claim, and (2) where the claimant has successfully prevailed in court on a challenge to the commission's denial of the claim *before* the claimant dies." (Emphasis sic.) *Byk I* at ¶ 8. The court further noted caselaw holding that "when an injured worker's claim abates upon his death, a deceased spouse cannot 'pursue' an injured worker's claim on his behalf." *Id.* at ¶ 9, citing *State ex rel. Nicholson v. Copperweld Steel Co.*, 77 Ohio St.3d 193, 196 (1996). Therefore, the court held that "because Bohdanus Byk died after the commission denied his claim for scheduled loss-of-use payments but before Bohdanus Byk successfully challenged the commission's denial, his claim for scheduled loss-of-use benefits abated at the time of his death." *Id.* at ¶ 10. The court further held that "because Bohdanus Byk's claim for scheduled loss-of-use payments abated upon his death, his estate could not pursue the claim on his behalf," and concluded that dismissal was warranted. *Id.*

{¶ 110}   Next, addressing Pin Cha Byk's argument that if the court "conclude[d] that Bohdanus Byk lacked standing to initiate this mandamus action after his death, then she, as representative of Bohdanus Byk's estate is being denied judicial review of a final order of the commission," this court stated, "We do not agree." *Byk I* at ¶ 11. The court expressly found that "R.C. 4123.60 specifically provides an opportunity for Pin Cha Byk to make a claim to the commission that Bohdanus Byk was lawfully entitled to the scheduled loss-of-

use benefits." *Id.* Emphasizing this point, the court stated that "Pin Cha Byk's remedy * * * is in her R.C. 4123.60 action." *Id.* In support of its finding, the court cited to *Vincent v. Wheeling Pittsburgh Steel Corp.*, 7th Dist. No. 99-JE-7, 1999 Ohio App. LEXIS 3662 (July 27, 1999), explaining that under this case "[a]n abated workers' compensation claim will not have collateral estoppel implications in the surviving spouse's R.C. 4123.60 action." *Id.* Furthermore, the court found that it was not necessary to "address whether the commission abused its discretion in denying the claim for scheduled loss-of-use benefits as the claim had abated and any review of the commission's denial of benefits would have resulted in an advisory opinion." *Id.* The court concluded that "Bohdanus Byk lacked standing to initiate the mandamus action, that Pin Cha Byk cannot pursue the mandamus action on his behalf but *has a remedy in her ongoing R.C. 4123.60 proceedings*, and that the instant mandamus action must be dismissed." (Emphasis added.) *Byk I* at ¶ 13.

{¶ 111} Thus, this court found Pin Cha Byk was able pursuant to R.C. 4123.60 to claim that Bohdanus Byk was lawfully entitled to the scheduled loss of use benefits. The court also explained that a decedent's abated workers' compensation claim does not have collateral estoppel consequences for the surviving spouse's claim brought pursuant to R.C. 4123.60. Neither Republic Steel nor the commission sought review of this decision before the Supreme Court of Ohio. *See State ex rel. Byk v. Indus. Comm.*, 166 Ohio St.3d 1451, 2022-Ohio-1002 (dismissing appeal filed by Pin Cha Byk). Therefore, consistent with this court's decision in *Byk I*, the arguments of the commission and Republic Steel are not well taken.

{¶ 112} The remaining question in this action as articulated by the magistrate previously assigned to this matter is whether Pin Cha Byk is entitled to a writ of mandamus because the commission had a clear legal duty to award scheduled loss of use benefits under R.C. 4123.57(B) based on the nature of Bohdanus Byk's injury. Under this court's precedent, such question must be answered in the negative.

{¶ 113} As noted by the commission, Pin Cha Byk's application as a dependent under R.C. 4123.60 was based on Bohdanus Byk's loss of use of his upper and lower bilateral extremities, the same alleged loss of use previously sought by Bohdanus Byk. Thus, the commission based its order denying Pin Cha Byk's application on the April 8, 2014 SHO order denying Bohdanus Byk's loss of use claim. In the April 8, 2014 order, the SHO denied

Bohdanus Byk's loss of use claim because of the Supreme Court of Ohio's decision in *Smith*, finding R.C. 4123.57(B) did not authorize loss of use compensation based on lack of brain stem functioning.

**{¶ 114}** Republic Steel asserts the commission correctly found that Bohdanus Byk's injury did not support an award for loss of use of his bilateral upper and lower extremities under R.C. 4123.57(B). Republic Steel argues the holding in *Smith* applies because the alleged loss of use in this case, as in *Smith*, is based entirely on the lack of brain stem functioning. Pin Cha Byk responds that *Smith* should not be extended to a claim for loss of use of limbs. She argues that the reasoning of *Smith* was limited to claims for loss of vision and hearing because, in *Smith*, "there was no way to quantify the amount of loss of vision and hearing of the injured worker while being in a persistent vegetative state, absent some damage to the structures of the eyes or ears that would allow a physician to determine objectively [the injured worker] could not see or hear." (Pin Cha Byk's Reply Brief at 15.) However, this court in *Walters* held otherwise.

**{¶ 115}** In that case, the injured worker had no bodily fractures, organ injuries, or injuries to his arms or legs. Rather, a traumatic cardiac arrest as a result of traumatic asphyxiation left the injured worker with a severe anoxic brain injury following his resuscitation. As a result of the anoxic brain injury, the injured worker was left without the function of his arms and legs until his death. Noting the holding of *Smith*, i.e., that loss of brain stem functioning does not exist in the schedule of compensation under R.C. 4123.57(B), the court found that "R.C. 4123.57(B) does not authorize loss of use compensation when a loss of brain function is the only cause of the loss of use of an arm or arms and/or a leg or legs rather than damage to the structure of one or both arms and/or one or both legs." *Walters*, 2022-Ohio-4587, at ¶ 19. The court distinguished prior cases where loss of use compensation was awarded for loss of use of extremities because those cases involved spinal or neck injuries in addition to brain injury. Thus, this court held that "where there is only a loss of brain function (i.e., as in the instant case in which decedent suffered a traumatic cardiac arrest as a result of traumatic asphyxiation, sustaining a severe anoxic brain injury), and no injury to a body part listed in R.C. 4123.57(B), and no other injury to the body, the commission does not abuse its discretion in failing to award loss of use compensation under R.C. 4123.57." *Id.* at ¶ 22.

{¶ 116} Here, neither Dr. Reichert's report nor the reports of Dr. Erickson reflect any injury to Bohdanus Byk's arms or legs. There is no record of a spinal cord injury. Rather, Dr. Reichert concluded that "Mr. Byk's brain injury and subsequent neurological sequelae from that injury are responsible for the persistent vegetative state and specifically the function of his extremities, both upper and lower." (Stip. at 15.) Dr. Erickson found that Bohdanus Byk "for all practical intent and purposes has permanently lost the use" of his right and left upper extremities, including his arms and hands, and right and left lower extremities, including his feet and legs on the basis of "the severe neurologic sequelae of [Bohdanus Byk's] traumatic brain injury with resultant loss of purposeful motions with joint contractures." (Stip. at 326.) Thus, the record reflects, and Pin Cha Byk does not otherwise contend, that any loss of use of Bohdanus Byk's bilateral upper and lower extremities was solely the result of his severe, traumatic brain injury. In accordance with *Walters*, Pin Cha Byk has not demonstrated a clear legal right to an award of scheduled loss of use compensation under R.C. 4123.57(B) based on Bohdanus Byk's injuries or that the commission was under a clear legal duty to grant loss of use compensation.

## D. Conclusion

{¶ 117} Therefore, Pin Cha Byk has not demonstrated a clear legal right to the requested relief or that the commission is under a clear legal duty to provide such relief. Accordingly, it is the decision and recommendation of the magistrate that Pin Cha Byk's request for a writ of mandamus should be denied.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.